No. 26-1343

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

State of Nevada *ex rel.* Nevada Gaming Control Board,

*Plaintiff-Appellee,*

*v.*

Blockratize Inc. d/b/a Polymarket; QCX LLC d/b/a Polymarket US;
Adventure One QSS Inc. d/b/a Polymarket,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Nevada
(Hon. Miranda Du)
No. 3:26-cv-00089

## ** EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 **
## EMERGENCY MOTION TO STAY ORDER PENDING APPEAL
## ** RELIEF REQUESTED BY APRIL 3, 2026 **

Mark A. Hutchison
Joseph C. Reynolds
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: 775.853.8746
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com

Adam P. Laxalt
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
Telephone: 202.220.9600
alaxalt@cooperkirk.com

Thomas H. Dupree Jr.
Jacob T. Spencer
Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
Telephone: 202.955.8500
tdupree@gibsondunn.com

Orin Snyder
Matthew Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com

*Attorneys for Defendants-Appellants*

## CIRCUIT RULE 27-3 CERTIFICATE

9th Cir. Case No. 26-1343

*State of Nevada ex rel. Nevada Gaming Control Board v. Blockratize Inc. d/b/a Polymarket, et al.*

I certify the following:

1.      The relief requested in the emergency motion that accompanies this certificate is for a stay pending appeal of the district court's order remanding this case to state court in Nevada.

2.      Relief is needed no later than: <u>Friday April 3, 2026.</u>

3.      If relief is not granted within the requested time, Appellants will be forced into parallel litigation in the Nevada state courts and this Circuit simultaneously. They will have to litigate the merits of this case—including whether Nevada's claims are preempted by federal law—in Nevada court. At the same time, Appellants will litigate federal jurisdiction in this Court. Should this Court determine that removal was proper, the state court could have already entered procedural and substantive rulings that will be difficult to unwind and that will have already undermined Appellants' right to a federal forum. Indeed, Plaintiff intends to seek a preliminary injunction against Appellants in the state court. Moreover, both the state and federal courts will have to adjudicate these matters while a potentially dispositive issue is pending in the Supreme Court, namely whether the

Ninth Circuit's causal-nexus requirement for federal officer removal is too stringent.

4.     Appellants could not have filed this motion earlier because the district court denied Appellants' motion for a stay only on March 12, 2026.  Appellants could not file a stay motion until that denial had issued.  Fed. R. App. 8(a)(2)(A)(ii).

5.     Appellants requested this relief in the district court on March 3, 2026.

6.     The parties stipulated to a briefing schedule for the district-court stay motion.  1App11.  And they asked the district court for a ruling by March 12 so that, if necessary, Appellants could file a motion in this Court by March 13.  1App11.

7.     Appellants notified Ninth Circuit court staff by email about the filing of this motion.

8.     Appellants notified the below counsel for Plaintiff of the filing of this motion by email on March 13, 2026.  Plaintiff opposes the motion.

Jessica E. Whelan
Chief Deputy Solicitor General – Litigation
John S. Michela
Senior Deputy Attorney General
Sabrena K. Clinton
Senior Deputy Attorney General
State of Nevada, Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov

jmichela@ag.nv.gov
sclinton@ag.nv.gov

9.    Counsel for Defendants, listed below, have consented to the filing of this

emergency motion.

Mark A. Hutchison
Joseph C. Reynolds
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: 775.853.8746
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com

Adam P. Laxalt
Cooper & Kirk, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
Telephone: 202.220.9600
alaxalt@cooperkirk.com

Thomas H. Dupree Jr.
Jacob T. Spencer
Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
Telephone: 202.955.8500
tdupree@gibsondunn.com

Orin Snyder
Matthew Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com

I declare under penalty of perjury that the foregoing is true.

**Signature**  _/s/ Thomas H. Dupree Jr._          **Date** March 13, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 5

    A.   Polymarket US Is A Designated Contract Market Exercising Delegated Federal Authority Under Federal Law. ....................... 5

    B.   Plaintiff Seeks *Ex Parte* Relief To Bar Polymarket US From Exercising Its Delegated Authority In Nevada. ........................... 7

    C.   Defendants Remove To Federal Court. ....................................... 9

LEGAL STANDARD ........................................................................ 10

ARGUMENT .................................................................................... 10

I.    Defendants Are Likely To Succeed In Persuading This Court To Reverse The Remand Order. ................................................... 10

    A.   The Federal Officer Removal Statute Applies ................................. 11

    B.   The District Court Has Federal Question Jurisdiction ...................... 19

II.   Without A Stay, Defendants' Right To Appeal The Remand Order Would Be Rendered Meaningless ............................................ 21

III.  The Balance Of Equities And Public Interest Favor A Stay. ......... 23

CONCLUSION .................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*Acad. of Country Music v. Cont'l Cas. Co.*,
991 F.3d 1059 (9th Cir. 2021) ............................................................21

*Arizona v. Manypenny*,
451 U.S. 232 (1981)............................................................................11

*Barry v. Cboe Glob. Mkts., Inc.*,
42 F.4th 619 (7th Cir. 2022) ..........................................................5, 13

*Blumberger v. Tilley*,
115 F.4th 1113 (9th Cir. 2024) ...........................................................25

*BP P.L.C. v. Mayor of Baltimore*,
593 U.S. 230 (2021)..............................................4, 11, 21, 23, 24, 25

*California v. CaremarkPCS Health LLC*,
2024 WL 3770326 (9th Cir. Aug. 13, 2024)........................................17

*City of San Francisco v. PG & E Corp.*,
433 F.3d 1115 (9th Cir. 2006) ............................................................24

*In re Commonwealth's Motion to Appoint Counsel Against or
Directed to Def. Ass'n of Phila.*,
790 F.3d 457 (3d Cir. 2015) ...............................................................12

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ...............................................................24

*DeFiore v. SOC LLC*,
85 F.4th 546 (9th Cir. 2023) .........................................................11, 22

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) .......................2, 11, 12, 14, 17, 18, 22

*Edwards v. Emperor's Garden Rest.*,
130 P.3d 1280 (Nev. 2006).................................................................20

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025)............................................................................16

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
   458 U.S. 141 (1982)....................................................................20, 21

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
   15 F.4th 70 (1st Cir. 2021)..........................................................21, 23

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) (en banc) ...........................................25

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
   865 F.3d 1237 (9th Cir. 2017) .........................................3, 11, 12, 13, 14, 16, 17

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
   545 U.S. 308 (2005)......................................................................2, 19

*Gunn v. Minton*,
   568 U.S. 251 (2013)..........................................................................19

*Harmon v. Tanner Motor Tours of Nev., Ltd.*,
   377 P.2d 622 (Nev. 1963)..............................................................19, 20

*California ex rel. Harrison v. Express Scripts, Inc.*,
   139 F.4th 763 (2025) .......................................................14, 21, 22, 23

*Houston v. Moore*,
   18 U.S. (5 Wheat.) 1 (1820)..............................................................20

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008) ..............................................................12

*Jefferson Cnty. v. Acker*,
   527 U.S. 423 (1999)............................................................................11

*Delaware ex rel. Jennings v. BP Am. Inc.*,
   2022 WL 605822 (D. Del. Feb. 8, 2022) ...........................................24

*KalshiEX LLC v. Flaherty*,
   2025 WL 1218313 (D.N.J. Apr. 28, 2025) .........................................19

*KalshiEx LLC v. Orgel*,
   2026 WL 474869 (M.D. Tenn. Feb. 19, 2026) ...................................18

*Leite v. Crane*,
   749 F.3d 1117 (9th Cir. 2014) ...........................................................11

*Liner v. Jafco, Inc.*,
　375 U.S. 301 (1964)............................................................25

*Mary Ferrell Found., Inc. v. Biden*,
　2024 WL 4880527 (9th Cir. Nov. 25, 2024)...........................25

*Nken v. Holder*,
　556 U.S. 418 (2009)...........................................................10

*Riggs v. Airbus Helicopters, Inc.*,
　939 F.3d 981 (9th Cir. 2019) ................................9, 10, 15

*Ruppel v. CBS Corp.*,
　701 F.3d 1176 (7th Cir. 2012) .......................................2, 3

*In re Ryze Claims Sols., LLC*,
　968 F.3d 701 (7th Cir. 2020) ......................................23, 24

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
　159 F.3d 1209 (9th Cir. 1998) .....................3, 5, 13, 14, 16

*Sykes v. Tex. Air Corp.*,
　834 F.2d 488 (5th Cir. 1987) ............................................24

*Tennessee v. Davis*,
　100 U.S. 257 (1879)......................................................22, 23

*Watson v. Philip Morris Cos.*,
　551 U.S. 142 (2007).......................................9, 12, 16, 22, 23

*Weiner v. Shearson, Hammill & Co.*,
　521 F.2d 817 (9th Cir. 1975) ............................................24

*Willingham v. Morgan*,
　395 U.S. 402 (1969)......................................................3, 14

## STATUTES

7 U.S.C. § 2(a) ...................................................1, 7, 18

7 U.S.C. § 5(b) ..............................................5, 6, 14, 23

7 U.S.C. § 7(d) ......................................6, 13, 15, 17, 18

7 U.S.C. § 7a-2(c) .................................6, 7, 13, 18

28 U.S.C. § 1331 ................................................................................9

28 U.S.C. § 1442 ........................................................................2, 9, 11

28 U.S.C. § 1447(d) ..........................................................................21

Nev. Rev. Stat. § 465.086 ...............................................2, 9, 10, 19, 20

## REGULATIONS

17 C.F.R. § 1.3 ...................................................................................5

17 C.F.R. § 38.151(c) .......................................................................18

17 C.F.R. § 40.2(a) .................................................................6, 13, 18

17 C.F.R. § 40.3(a) .................................................................6, 13, 18

17 C.F.R. § 40.11(c) ...............................................................6, 13, 18

## OTHER AUTHORITIES

*CFTC Prediction Markets Advisory*, CFTCLTR No. 26-08 (Mar. 12, 2026)................................................................................1, 5, 18

*Futures Glossary: A Guide to the Language of the Futures Industry*, CFTC .............................................................................................6

# INTRODUCTION

Defendants seek immediate relief from an unprecedented remand order that forecloses an entire category of removal Congress has expressly authorized. The district court administratively stayed its remand order until Monday, April 6, 2026. Accordingly, Defendants respectfully request that this Court stay the remand order—or further extend the administrative stay—by Friday, April 3.

For more than 50 years, the Commodity Futures Trading Commission ("CFTC") has exercised "exclusive jurisdiction" over derivatives trading on CFTC-designated contract markets. 7 U.S.C. § 2(a)(1)(A). The CFTC shares "front-line regulator[y]" responsibilities with the contract markets themselves, which exercise delegated governmental authority as "self-regulatory" organizations, *CFTC Prediction Markets Advisory* at 1, CFTCLTR No. 26-08 (Mar. 12, 2026).[1] Unhappy with the balance Congress struck, Plaintiff, Nevada's gambling regulator, has launched a campaign to shut down these markets through *ex parte* "emergency" injunctions in state court. The CFTC recently told this Court that these "temporary restraining order[s]" represent "a seismic shift in the longstanding status quo between CFTC and state authority." 2App169. It explained that Plaintiff's ongoing efforts risk serious "destabilizing economic effects" by "upend[ing]" the

---

[1] https://www.cftc.gov/csl/26-08/download.

congressionally devised national regulatory scheme. 2App172; 2App197 (capitalization altered).

After Plaintiff obtained an *ex parte* temporary restraining order in state court, Polymarket US and the other Defendants removed, invoking the federal officer removal statute. That statute, enacted to prevent state courts from "paralyz[ing] the operations of the government," *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1254 (9th Cir. 2006), guarantees a federal forum to private entities that "act under" a government agency, 28 U.S.C. § 1442(a)(1).

Defendants also invoked the district court's federal question jurisdiction. Nevada requires a gaming license unless "law" "otherwise provide[s]." Nev. Rev. Stat. § 465.086(1). Because the U.S. and Nevada Supreme Courts have held that the term "law" usually encompasses both state and federal law, Defendants explained that Plaintiff cannot succeed on its claims without grappling with the authorization supplied by federal law—a classic embedded federal question under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

The district court remanded. It concluded that the federal government's obligation to supervise private entities like Polymarket US means that Polymarket US was not "acting under" the government—a ruling that would defeat removal by *any* private entity. Section 1442, however, "has historically authorized removal by

- 2 -

private parties without qualification." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012).

The district court's decision is irreconcilable with Ninth Circuit and Supreme Court precedent. This Court has held that self-regulatory organizations like Polymarket US "exercis[e] quasi-governmental powers" and share in governmental immunity. *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998). And the Supreme Court has held that federal officer removal is "*broader* . . . than the test for official immunity." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (emphasis added). The district court did not address these holdings. Instead, it reasoned that the CFTC's power to "rescind" contract markets' rules means Polymarket US was not "acting under" the CFTC. 1App19. But the Constitution *requires* that federal agencies have authority to rescind decisions delegated to private entities. And the Supreme Court and Ninth Circuit have repeatedly held that government "subjection, guidance, or control" is *indicative* of an "acting under" relationship, not fatal to it. *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017).

The district court's federal question holding is also erroneous. The court announced that the Nevada statute's reference to "law" included only state law. But the court did not cite any supporting authority or explain how it could be squared

with the text of Nevada's statute, which expressly references "federal" law in the same statutory sentence.

Defendants are likely to succeed on appeal of the remand order. But that success would be meaningless if they must litigate in state court in the meantime. Plaintiff will continue to rush through litigation and press for unwarranted emergency relief shutting down Polymarket US and exacerbating the already destabilizing effects of Plaintiff's unlawful tactics.

The public interest and balance of harms also support a stay. Forcing the parties to litigate the same issues once in state court and again on return to federal court would be senseless and avoidable. Plaintiff might complain about the brief delay caused by this appeal, but Congress was well aware of—and "accepted"—"the delay" caused by meaningful "appellate review" in section 1442 cases. *BP P.L.C. v. Mayor of Baltimore*, 593 U.S. 230, 245 (2021). And Plaintiff's decision to wait for almost a year without taking any steps to enforce its gambling laws against another designated contract market undermines any urgency or immediate harm Plaintiff might claim.

The Court should grant a stay pending appeal.

## BACKGROUND

### A.     Polymarket US Is A Designated Contract Market Exercising Delegated Federal Authority Under Federal Law.

Exchange trading is vital to the national economy.  Though the securities and derivatives industries are extensively regulated by the federal government, day-to-day oversight is the job of self-regulatory organizations, which "exercis[e] quasi-governmental powers" through "authority delegated by Congress" and federal agencies.  *Sparta Surgical*, 159 F.3d at 1213-14.

This case concerns the self-regulatory scheme in the Commodity Exchange Act ("CEA").  Through the CEA, Congress established "a system of effective self-regulation of trading facilities . . . under the oversight of the" CFTC.  7 U.S.C. § 5(b).  At this system's center are contract markets—CFTC-designated exchanges that function as "self-regulatory organizations," "possess[ing] a form of delegated" government authority to oversee trading on their exchanges.  *Barry v. Cboe Glob. Mkts., Inc.*, 42 F.4th 619, 625 (7th Cir. 2022); *see* 17 C.F.R. § 1.3 (categorizing contract markets as "[s]elf-regulatory organization[s]").  These exchanges, the CFTC explained just this month, play an "important role . . . in promoting the integrity of derivatives markets."  *CFTC Prediction Markets Advisory*, *supra*, at 2.

Polymarket US is a CFTC-designated contract market specializing in event contracts.  3App274.  Event contracts are a type of "swap," a financial instrument where the parties agree to swap payments based on an agreed formula, such as

- 5 -

interest rates or the outcome of real-world events. *Id.* For event contracts, the "payoff is based on a specified event or occurrence such as the release of a macroeconomic indicator, a corporate earnings announcement, or the dollar value of damages caused by a hurricane." CFTC, *Futures Glossary: A Guide to the Language of the Futures Industry.*[2]

In operating a designated contract market, Polymarket US performs a broad array of regulatory functions "under the oversight of the Commission." 7 U.S.C. § 5(b). As a self-regulatory organization, Polymarket US must, for example, "establish, monitor, and enforce compliance with the rules of the contract market," including market "access requirements," "the terms and conditions of any contracts to be traded," and "rules prohibiting abusive trade practices on the contract market." 7 U.S.C. § 7(d)(2)(A). Polymarket US has considerable discretion in how it exercises that delegated federal authority. 7 U.S.C. § 7(d)(1)(B).

Polymarket US's self-regulatory responsibilities extend to the listing of event contracts. To list new contracts, Polymarket US must either seek CFTC approval or certify the contract complies with federal law and the Commission's requirements. 7 U.S.C. § 7a-2(c)(1), (4)(A), (5)(C); 17 C.F.R. §§ 40.2(a), 40.3(a), 40.11(c). The CFTC may investigate, stay, or amend the contract after it has been listed. 17 C.F.R. § 40.2(c). If the CFTC determines that a proposed "[e]vent contract" involves

---

[2] https://tinyurl.com/3h6f35rj (last visited March 13, 2026).

certain subjects, including "gaming," the agency may prohibit the listing if the contract would be "contrary to the public interest." 7 U.S.C. § 7a-2(c)(5)(C).

**B.  Plaintiff Seeks *Ex Parte* Relief To Bar Polymarket US From Exercising Its Delegated Authority In Nevada.**

"[T]ransactions involving" event contracts and other "swaps" traded on a CFTC-designated contract market are subject to the CFTC's "exclusive jurisdiction." 7 U.S.C. § 2(a)(1)(A).  As the CFTC recently explained to this Court, that means States may not purport to regulate those transactions or contracts. 2App188.

Nevertheless, in January 2026, Plaintiff sued Defendants, claiming that Polymarket US's offering of federally regulated event contracts in the State violates Nevada gaming statutes.  3App299.  In Plaintiff's view, event contracts for "sporting events and other events" constitute "wagers" under Nevada law.  3App303.  And making trading on those event contracts "available to persons located in Nevada" is unlawful because Polymarket US does not have a state license.  3App305.  Plaintiff also alleges that Polymarket US acts unlawfully by "not employ[ing] adequate safeguards to ensure that wagers are not being placed on an event from owners, coaches, players, or officials participating in the event," by allowing "persons under

- 7 -

the age of 21 years" to trade, and by "not pay[ing] taxes" to "Nevada." 3App305-06.[3]

Plaintiff sought an *ex parte* temporary restraining order and preliminary injunction, urging the state court to issue relief without allowing Defendants to "be heard in opposition." 3App330. To justify that extraordinary relief, Plaintiff represented that it suffered "serious, ongoing, and irreparable harms" "every day" Polymarket US operates in Nevada. 3App331.

Despite Defendants' request to file a full opposition brief, 3App335, the state court entered a temporary restraining order, 3App384-85. The order enjoined Polymarket US "from operating or offering a market in Nevada that involves 'events-based contracts.'" 3App384. This appears to be the first time a court has ever shuttered a federally licensed event contract market. 2App75. Plaintiff has since repeated this *ex parte* maneuver with other CFTC-regulated event-contract markets. *See*, *e.g.*, 2App169-70; Plaintiff's *Ex Parte* Mot. for TRO, *State of Nevada v. KalshiEx, LLC*, No. 2:26-cv-00406 (D. Nev. Mar. 9, 2026), ECF 56 (seeking *ex parte* temporary restraining order almost a year into litigation against another contract market).

---

[3] Plaintiff also named Blockratize Inc. and Adventure One QSS Inc. as defendants. The complaint refers to all three entities collectively as "Polymarket," and the allegations do not distinguish between the companies. 3App314. Adventure One QSS Inc. does not operate in Nevada at all; it is a foreign corporation that operates an international market not offered in the United States. 3App279.

### C.     Defendants Remove To Federal Court.

Defendants removed to the District of Nevada, invoking the court's jurisdiction under the federal officer removal statute and federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1442(a); 3App274. Defendants explained that the federal officer removal statute applies because Polymarket US "act[s] under" the CFTC by "assist[ing]" and "help[ing] carry out" federal responsibilities, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (emphasis omitted), including by regulating market access, promulgating and enforcing rules against market manipulation, and certifying contracts for listing, 3App282-83.

The notice of removal also set out the basis for federal question jurisdiction. Under *Grable*, jurisdiction exists where a plaintiff's claims cannot be adjudicated without resolving contested questions of federal law. 3App285. Because Nevada's licensing regime does not apply if the "law" "otherwise provide[s]," Defendants explained, Plaintiff cannot succeed on its claims without first addressing the CEA. Nev. Rev. Stat. § 465.086(1); *see* 3App285-86.

On March 2, the district court granted Plaintiff's motion to remand. 1App15. The court held that Polymarket US's delegated authority to "regulat[e] access" to its market and "self-certify[] that [its] contracts comply with the CEA" demonstrated "'mere compliance with regulatory standards,'" not "assistance" to the CFTC as required by section 1442. 1App19 (quoting *Riggs v. Airbus Helicopters, Inc.*, 939

- 9 -

F.3d 981, 989 (9th Cir. 2019)).  According to the district court, the CFTC's "ability to override Polymarket's decisions" was dispositive.  1App19-20.

As for federal question jurisdiction, the district court held that the term "'law' as used in NRS § 465.086(1) refers" to Nevada law, not federal law.  1App22.

On March 12, the district court denied Defendants' motion for a stay pending appeal.  1App3.

## LEGAL STANDARD

When deciding whether to grant a stay pending appeal, this Court considers four factors: (1) the stay applicant's likelihood of success on the merits; (2) whether the stay applicant will be irreparably injured absent the stay; (3) whether the stay would substantially injure other parties; and (4) the public interest.  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  "The first two factors . . . are the most critical."  *Id.* at 434.  Where "the Government is the opposing party," the last two "factors merge."  *Id.* at 435.

## ARGUMENT

## I.    Defendants Are Likely To Succeed In Persuading This Court To Reverse The Remand Order.

On appeal, Defendants will argue that the district court erred by holding that it lacked jurisdiction.  There is a strong likelihood that Defendants will prevail as to one or both of their bases for removal.  Because the federal-officer portion of the remand order is appealable, the Court may review all of the "grounds for removal"

- 10 -

addressed in the order. *BP P.L.C.*, 593 U.S. at 238.

### A. The Federal Officer Removal Statute Applies.

**1.** Enacted in response to state "attempt[s] to nullify federal ... laws," the federal officer removal statute ensures States cannot "retain [a] suit in a tribunal ... in such a manner as to paralyze the operations of the government." *Durham*, 445 F.3d at 1254. To that end, the statute permits a federal officer, agency, "or any person acting under that officer" to remove an action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

In keeping with Congress' "policy favoring removal" under section 1442, the federal officer statute is subject to unique rules. *Goncalves*, 865 F.3d at 1244. Instead of looking to "the complaint" for purposes of the "jurisdictional inquiry," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431-32 (1999), courts must "credit the *defendant's* theory of the case," *Leite v. Crane*, 749 F.3d 1117, 1124 (9th Cir. 2014) (emphasis added). And the policy favoring removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244 (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)).

"[P]rivate entit[ies]" have long been permitted to remove under section 1442. *DeFiore v. SOC LLC*, 85 F.4th 546, 553 (9th Cir. 2023). Removal is appropriate where (a) the defendant "is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions,

and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251.

The only live issue is whether Polymarket US took "'actions under' a federal officer." *Goncalves*, 865 F.3d at 1244; *see* 1App17. Those words—"acting under"—"are broad." *Goncalves*, 865 F.3d at 1245. "For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *Id.* (quoting *Watson*, 551 U.S. at 152). The private entity must do more than "simply comply[] with the law"—it must "help officers fulfill other basic governmental tasks." *Id.* (alteration adopted). "The relationship typically involves subjection, guidance, or control." *Id.*

Courts have consistently treated the "delegation of legal authority" as establishing an acting-under relationship. *Watson*, 551 U.S. at 156; *see*, *e.g.*, *Goncalves*, 865 F.3d at 1247 (government "delegated th[e] responsibility to [insurance] carriers" "to pursue subrogation claims"); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) ("Defendants received delegated authority; they were not simply regulated by federal law."); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 469 (3d Cir. 2015) ("the Federal Community Defender was 'acting under' a federal agency" because it was "delegated the authority to provide representation").

**2.** These principles make this an easy case. Self-regulatory organizations "exercis[e] quasi-governmental powers" and "authority delegated by Congress" or federal agencies. *Sparta Surgical*, 159 F.3d at 1213-14; *see, e.g.*, *Barry*, 42 F.4th at 625 (specifically discussing "contract markets"). Exercising such authority, Polymarket US "establish[es] and enforce[s] rules," including by setting market "access requirements," "the terms and conditions of any contracts to be traded on the contract market," and "rules prohibiting abusive trade practices on the contract market." 7 U.S.C. § 7(d)(2), (12); *see* 3App282.

Further, Polymarket US acts under the "direction," "supervision," and "guidance" of the CFTC. *Goncalves*, 865 F.3d at 1245. To implement or revise a rule, for example, Polymarket US must either submit it to the CFTC for approval or certify that the rule complies with federal law and the Commission's requirements. 7 U.S.C. § 7a-2(c)(1), (4)(A). The CFTC may allow the rule to go into effect, or it may stay the rule pending further review. *Id.* § 7a-2(c)(2)-(3). Likewise, when Polymarket US seeks to list new event contracts for trading, it must submit the contract for CFTC approval or certify that the contract complies with federal law and the Commission's requirements. *Id.* § 7a-2(c)(1), (4)(A), (5)(C); 17 C.F.R. §§ 40.2(a), 40.3(a), 40.11(c). The CFTC retains authority to investigate, stay, or amend the contract after it has been listed. 17 C.F.R. § 40.2(c); *see* 3App282-83.

Accordingly, Polymarket US is "involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Goncalves*, 865 F.3d at 1245 (emphases and citation omitted). As the CEA itself puts it, Polymarket US is part of "a system of effective self-regulation" acting "under the oversight of the Commission." 7 U.S.C. § 5(b).

**3.** The district court's contrary holding clashes with this Court's precedents. Under *Sparta Surgical*, when self-regulatory organizations adopt and enforce their "own rules," including those "govern[ing] [the] decision to list . . . an offering," they "act[] in a quasi-governmental capacity" and "perform[] a regulatory function"—so much so that the organizations are "cloaked in [quasi-governmental] immunity." 159 F.3d at 1214-15. Because federal officer removal "aims to guarantee a federal forum for adjudication of federal . . . defenses," including "federal immunity defenses," *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 771 n.7 (9th Cir. 2025) (emphasis omitted), the Supreme Court held decades ago that section 1442 is "*broader* . . . than the test for official immunity," *Willingham*, 395 U.S. at 407 (emphasis added). Under the district court's approach, however, a self-regulatory organization would be unable to secure federal adjudication of these core federal defenses. This is exactly the sort of "narrow, grudging interpretation of § 1442(a)(1)" the Court has warned against. *Durham*, 445 F.3d at 1252. But the district court did not mention *Sparta Surgical*.

Instead, the district court relied on *Riggs v. Airbus Helicopters, Inc*. But the defendant there "d[id] *not* make or promulgate federal law." 939 F.3d at 985 (emphasis added). Although the defendant claimed to exercise "delegated legal authority from the FAA" "to inspect aircraft designs and issue certifications," the entity was in fact "duty-bound to follow prescriptive rules set forth by the FAA." *Id.* at 984-85, 989. This kind of "certified compliance," a divided panel held, was no different from "compliance generally." *Id.* at 985 n.6.

*Riggs* does not apply here. Because *Riggs* did not involve delegated rulemaking authority, it necessarily could not depart from the general rule that delegated rulemaking authority *does* establish an acting-under relationship. *See id.* at 989 (reaffirming the "analys[i]s from . . . *Goncalves*"). To the extent *Riggs* is relevant, it merely confirms that a private entity that is *not* purely "duty-bound to follow prescriptive rules" is engaged in *more* than mere compliance with federal law. *Id.* That is precisely the situation here: Designated contract markets "have reasonable discretion in establishing the manner in which [they] compl[y]" with their delegated authority to establish, monitor, and enforce compliance with rules. 7 U.S.C. § 7(d)(1)(B).

Extending *Riggs* to delegated rulemaking authority would destroy the federal officer removal statute. According to the district court, because *Riggs* noted that the FAA could "rescind any action taken . . . in the certification process," the CFTC's

- 15 -

"ability to override Polymarket's decisions regarding access" similarly means that Polymarket US is merely "compl[ying] with the law." 1App19-20. But the Constitution *requires* that the government "retain[] decision-making power" over private entities exercising delegated government authority. *FCC v. Consumers' Rsch.*, 606 U.S. 656, 692 (2025). If the district court were correct, then federal officer removal by private entities would be permissible only where the government's delegation raises serious constitutional concerns.

That is not the law. To the contrary, the acting-under "relationship typically *involves* subjection, guidance, or control." *Goncalves*, 865 F.3d at 1245 (emphasis added) (quoting *Watson*, 551 U.S. at 151). In *Goncalves*, "the relationship" between the government and the defendants was "an unusually close one involving detailed regulation, monitoring, and supervision," *id.* at 1245, and the defendants "ultimately answer[ed] to federal officials," *id.* at 1247. That relationship helped *establish* that defendants were acting under the federal government. *Id.* at 1245. In *Sparta Surgical*—which applied the (narrower) test for immunity—the organization was immune even though the organization's rules were subject to government approval, and even though the government could "abrogate, add to, and delete from" those rules "as it deem[ed] necessary or appropriate." 159 F.3d at 1212. The district court's reasoning squarely conflicts with these decisions.

**4.** Because the district court's federal officer conclusion rested solely on the "arising under" element, this Court is likely to reverse on that basis alone. *See*, *e.g.*, *Durham*, 445 F.3d at 1254 (reversing and "express[ing] no opinion" on elements of section 1442 the district court "did not reach"); *California v. CaremarkPCS Health LLC*, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024) (similar). In any event, Polymarket US readily satisfies the remaining section 1442 requirements.

*First*, Polymarket US, like any "corporat[e]" entity, "is a 'person' within the meaning of § 1442(a)(1)." *Goncalves*, 865 F.3d at 1244.

*Second*, there is an obvious "causal nexus between" Polymarket US's exercise of its delegated authority "and plaintiff's claims." *Durham*, 445 F.3d at 1251.[4] Plaintiff's lawsuit attempts to shut down Polymarket US and prevent it from exercising its delegated federal authority in Nevada *entirely*. 3App309. And multiple allegations in Plaintiff's complaint directly challenge specific ways in which Polymarket US exercises that authority.

For example, by contending that Polymarket US's market access must be limited according to Plaintiff's preferences, 3App305-06, Plaintiff takes aim at Polymarket US's delegated authority to "establish, monitor, and enforce compliance

---

[4] In *Chevron USA, Inc. v. Plaquemines Parish*, No. 24-813 (U.S.), the Supreme Court is currently considering whether the causal-nexus standard is too restrictive.

- 17 -

with" market "access requirements," 7 U.S.C. § 7(d)(2)(A); *see* 17 C.F.R. § 38.151(c) (similar).

Similarly, Plaintiff alleges that Polymarket US violates state law because it "do[es] not employ adequate safeguards" to ensure "wagers" are not placed by event participants, 3App305—an attack on how Polymarket US exercises its delegated authority "to prevent manipulation, price distortion, and disruptions," 7 U.S.C. § 7(d)(14); *see also id.* § 7(d)(13) (similar rulemaking authority); *CFTC Prediction Markets Advisory*, *supra*, at 1-2 ("As front-line regulators," contract markets play an "important role . . . in promoting the integrity of derivatives markets.").

Likewise, Plaintiff seeks to prohibit contracts Polymarket US offers for listing. But again, the CEA expressly delegates authority to "establish, monitor, and enforce compliance with the rules of the contract market, including . . . the terms and conditions of any contracts to be traded on the contract market." 7 U.S.C. § 7(d)(2)(A). And in self-certifying contracts for listing, designated contract markets must ensure they comply with federal law and the Commission's requirements. *Id.* § 7a-2(c)(1), (4)(A), (5)(C); 17 C.F.R. §§ 40.2(a), 40.3(a), 40.11(c).

*Third*, Polymarket US's "federal defense" is a "colorable" one. *Durham*, 445 F.3d at 1251. Multiple courts and the CFTC agree that the CFTC's "exclusive jurisdiction" over event contracts traded on a contract market preempts state regulation. 7 U.S.C. § 2(a)(1)(A); *see, e.g.*, 2App188; *KalshiEx LLC v. Orgel*, 2026

- 18 -

WL 474869, at *9 (M.D. Tenn. Feb. 19, 2026); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *8 (D.N.J. Apr. 28, 2025).

For all of these reasons, Defendants are more than likely to establish jurisdiction under the federal officer removal statute.

## B. The District Court Has Federal Question Jurisdiction.

Even where a complaint does not mention federal law, jurisdiction exists if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting" the balance of "federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable*, 545 U.S. at 314. Plaintiff's claims satisfy that standard because they cannot be adjudicated without resolving contested questions of federal law.

Plaintiff alleges that Polymarket US has violated Nevada Revised Statute § 465.086. That law states: "*Except as otherwise provided by law*, it is unlawful" to accept wagers "without having first procured, and thereafter maintaining in effect, all *federal*, state, county and municipal gaming licenses as required by statute." *Id.* (emphases added). The Nevada Supreme Court has held that, when a statute governs "[e]xcept as otherwise provided by law," it does not apply if the conduct at issue is "squarely within the applicable provisions" of a different statute. *Harmon v. Tanner Motor Tours of Nev., Ltd.*, 377 P.2d 622, 626 (Nev. 1963). So, if "law" in Nevada Revised Statute § 465.086 encompasses federal law, Plaintiff will have to prove that

Polymarket US's contracts fall outside the ambit of the CEA.

Ordinarily, the term "law" refers to both "federal" and "state" law. *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1286 (Nev. 2006). The Nevada Supreme Court has said so. *Id.* The U.S. Supreme Court, too, has held that "incorporating state . . . law" incorporates federal law as well: "[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982). To decide Nevada's state-law claims, then, the court must interpret the scope and effect of "the applicable provisions" of the CEA—which is a federal question. *Harmon*, 377 P.2d at 626.

The district court "rejected" this argument—its sole basis for rejecting federal question jurisdiction—but it did not explain why. 1App22 n.6. The court did not cite a single supporting authority or attempt to square its holding with the express statutory reference to "federal . . . licenses." Nev. Rev. Stat. § 465.086. For its part, Plaintiff relied on a concurrence from 1820, insisting, incorrectly, that "the Supreme Court already ha[s] held that when a statute refers to 'law' generally, the statute is presumed to refer 'only . . . to the laws of the government' that passed the statute." 2App63 (quoting *Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 42 (1820) (Johnson, J., concurring)). To the extent the district court embraced that concurrence, it erred: In *Fidelity Federal Savings*, the Supreme Court "rejected" the same "contention"

Plaintiff now raises, holding that "the 'law of the jurisdiction' includes federal as well as state law." 458 U.S. at 157 n.12.

Accordingly, the district court's federal question holding is unlikely to survive appellate scrutiny.

## II. Without A Stay, Defendants' Right To Appeal The Remand Order Would Be Rendered Meaningless.

A stay is necessary to prevent irreparable injury. Appellants have the statutory right to appeal the district court's remand order. 28 U.S.C. § 1447(d). But because of the breakneck pace of Plaintiff's enforcement proceedings, "depriv[ing]" Defendants "of access to a federal court" while the appeal proceeds, *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021), risks "defeat[ing] the very purpose of permitting an appeal" in the first place, *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021).

When determining whether a remand pending appeal will affect a defendant's appellate rights, this Court considers statutory "purpose" and "Congress's intent." *Express Scripts*, 139 F.4th at 770. Ordinarily, remand orders are not appealable. *BP P.L.C.*, 593 U.S. at 235. By carving out an "exception for suits . . . removed pursuant to 28 U.S.C. § 1442," however, "Congress has deemed it appropriate to allow appellate review *before* a district court may remand a case to state court." *Id.* at 236 (emphasis added). This choice furthers the purposes of section 1442: "to guarantee a federal forum for adjudication of federal . . . defenses," *Express Scripts*, 139 F.4th

- 21 -

at 771 n.7 (emphasis omitted), and to prevent "the exercise of . . . Federal power" from being "arrested" "during the pendency of the prosecution," *Tennessee v. Davis*, 100 U.S. 257, 263 (1879); *see DeFiore*, 85 F.4th at 555 (similar).

This Court in *Express Scripts* determined that "the discretionary stay system" would be better suited for resolving stays pending appeal from a remand order than would an automatic stay. 139 F.4th at 772. That is because not every remand to state court pending appeal will "frustrate th[e] purpose" of section 1442—for example, if remand meant only that "some pretrial litigation" or "discovery" proceeded pending appeal "of the remand order." *Id.* at 771 & n.7. Ordinarily, pretrial litigation will not require a defendant to "litigate the merits of [substantive federal] defenses," *id.* at 771 n.6, or threaten "to paralyze the operations of the government," *Durham*, 445 F.3d at 1254. Federal officer appeals therefore do not categorically require a stay; the irreparable-harm determination should instead be "case-specific." *Express Scripts*, 139 F.4th at 769.[5]

The specifics of *this* case confirm that irreparable harm would be unavoidable absent a stay. Plaintiff insists that it wants "the state court" to "consider[] the merits of the" litigation while this appeal is pending, 2App64, thereby "depriv[ing]" Polymarket US "of a federal forum in which to assert [its] federal . . . defenses,"

---

[5] Because the defendants in *Express Scripts* "did not . . . attempt to counter Plaintiffs' arguments based on *Nken*," the panel did not address any *Nken*-based arguments. 139 F.4th at 773.

*Watson*, 551 U.S. at 150. And even if "the case can be brought into the United States court for review" before Plaintiff achieves that goal, Plaintiff's insistence on seeking emergency—often *ex parte*—injunctive relief promises to "arrest[]" if not "paralyze the operations of the government." *Davis*, 100 U.S. at 263. As the CFTC has explained, state court injunctions have caused "regulatory fragmentation," "undermin[ed]" the CEA's "national regulatory structure," and eroded the CFTC's "comprehensive federal oversight." 2App193-95. An eventual reversal by this Court could not undo the harm Plaintiff would cause to the federal "system of effective self-regulation" in the meantime. 7 U.S.C. § 5(b).

Here, "litigation in state court for" even "a brief period pending appeal" would "frustrate th[e] purpose[s]" of section 1442. *Express Scripts*, 139 F.4th at 771 & n.7. Ensuring "appellate review *before* [the] district court may remand [the] case to state court," *BP P.L.C.*, 593 U.S. at 236 (emphasis added), is necessary to prevent Defendants from being left "holding an empty bag" even if they "prevail[] on appeal," *Forty Six Hundred*, 15 F.4th at 79.

## III. The Balance Of Equities And Public Interest Favor A Stay.

"[P]rinciples of judicial economy" strongly favor a stay. *Express Scripts*, 139 F.4th at 772. "The public interest" is best "served by litigating [this case] in one court"—either federal court or state court—after this Court has resolved the jurisdictional issues. *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 712 (7th Cir.

2020); *see, e.g., Def. Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022) ("the public has an interest in the comparative speediness and cost-savings from utilizing a single forum"); *Delaware ex rel. Jennings v. BP Am. Inc.*, 2022 WL 605822, at *2 (D. Del. Feb. 8, 2022) (collecting district-court decisions).

If "the remand is reversed" without a stay, any "progress made in the state court proceedings may be nullified and the parties forced to restart in federal court." *Sykes v. Tex. Air Corp.*, 834 F.2d 488, 491 (5th Cir. 1987). This would, at minimum, cause considerable "confusion." *City of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1122 (9th Cir. 2006). And "the effort expended by the parties" and "state judicia[ry]" would be "in jeopardy" of being wasted. *Id.* All this "needless duplication of judicial effort" is avoidable with a stay. *Def. Distributed*, 30 F.4th at 429; *see Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 820 (9th Cir. 1975) (similar).

On the other side of the ledger, a brief stay would serve Congress' goals. By taking the rare step of permitting appeals from section 1442 remands, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP P.L.C.*, 593 U.S. at 245.

Plaintiff has previously objected to that short delay on Nevada public-policy grounds, *see* 2App66-68, but the objection fails.

*First*, the Supreme Court has held that "even the most formidable policy arguments cannot overcome [Congress'] clear statutory directive" authorizing that delay. *BP P.L.C.*, 593 U.S. at 245; *see Blumberger v. Tilley*, 115 F.4th 1113, 1126 (9th Cir. 2024) (same). Plaintiff's objections, grounded in "state law and policy[,] must yield" "[t]o the federal statute and policy." *Liner v. Jafco, Inc.*, 375 U.S. 301, 309 (1964).

*Second*, Plaintiff's claims of imminent harm are not credible. Since April 2025, Plaintiff has asserted that it suffers "immediate and irreparable harm" every day it cannot enforce its gambling laws against CFTC-designated contract markets. 2App212-13. But when a district court enjoined enforcement of those laws against another contract market and denied Plaintiff's own request for injunctive relief, Plaintiff did not appeal. 2App212-13. Plaintiff instead waited six months before attempting to dissolve the injunction against it. 2App213. Then Plaintiff waited another three months before bringing an enforcement action against that other contract market. 2App213.

"Plaintiff's long delay . . . implies a lack of urgency and irreparable harm." *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc); *see Mary Ferrell Found., Inc. v. Biden*, No. 24-1606, 2024 WL 4880527, at *4 (9th Cir. Nov. 25, 2024) ("By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action.").

- 25 -

## CONCLUSION

All four factors favor a stay. Defendants respectfully request that this Court stay the remand order pending appeal.

Dated: March 13, 2026

Mark A. Hutchison
Joseph C. Reynolds
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746

Adam P. Laxalt
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

By: */s/ Thomas H. Dupree Jr.*

Thomas H. Dupree Jr.
Jacob T. Spencer
Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
TDupree@gibsondunn.com
JSpencer@gibsondunn.com
ASteene@gibsondunn.com
(202) 955-8500

Orin Snyder
Matt Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
OSnyder@gibsondunn.com
MBenjamin@gibsondunn.com
(212) 351-4000

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A), Circuit Rule 27-1, and Circuit Rule 32-3, because it contains 5,551 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

The response complies with the typeface and type-style requirements of Rule 32(a)(5)(A) and (a)(6) because it has been prepared in 14-point, Times New Roman font.

Dated: March 13, 2026                    GIBSON, DUNN & CRUTCHER LLP


By: /s/ *Thomas H. Dupree Jr.*