No. 26-1343

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

State of Nevada *ex rel.* Nevada Gaming Control Board,

*Plaintiff-Appellee,*

*v.*

Blockratize Inc. d/b/a Polymarket; QCX LLC d/b/a Polymarket US;
Adventure One QSS Inc. d/b/a Polymarket,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Nevada
(Hon. Miranda Du)
No. 3:26-cv-00089

## DEFENDANTS-APPELLANTS BLOCKRATIZE INC. D/B/A
## POLYMARKET; QCX LLC D/B/A POLYMARKET US;
## ADVENTURE ONE QSS INC. D/B/A POLYMARKET
## APPENDIX: VOLUME 1 OF 3

Mark A. Hutchison
Joseph C. Reynolds
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: 775.853.8746
mhutchison@hutchlegal.com

Adam P. Laxalt
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
Telephone: 202.220.9600
alaxalt@cooperkirk.com

Thomas H. Dupree Jr.
Jacob T. Spencer
Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
Telephone: 202.955.8500
tdupree@gibsondunn.com

Orin Snyder
Matthew Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
osnyder@gibsondunn.com

*Attorneys for Defendants-Appellants*

**Order Denying Defendant's
Motion for Stay Pending Appeal
Dist. Ct. Doc. 53 (filed March 12, 2026)**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD, | Case No. 3:26-cv-00089-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| BLOCKRATIZE INC., *et al.*, | |
| Defendants. | |

## I.   SUMMARY

This is a state enforcement action brought by Plaintiff State of Nevada ex rel. Nevada Gaming Control Board ("the Board") against Blockratize Inc. d/b/a Polymarket QCX LLC d/b/a Polymarket US and Adventure One QSS Inc. d/b/a Polymarket (collectively, "Polymarket") for alleged violations of Nevada state gaming laws. (ECF No. 1-3.) Polymarket removed to this Court (ECF No. 1) and the Board moved to remand (ECF No. 7). The Court subsequently granted the motion to remand and remanded this case to the First Judicial Court of Nevada, Carson City. (ECF No. 41 ("Remand Order").)[1] Polymarket then filed a motion for stay pending appeal. (ECF No. 46 ("Motion").)[2] The Court granted the parties' request to recall the Remand Order to resume jurisdiction while it considered Polymarket's Motion. (ECF No. 48.) Because the *Nken* factors do not favor granting a stay, the Court will deny the Motion.

---

[1]Polymarket has appealed the Court's Remand Order. (ECF No. 45.)

[2]The Court granted the parties' stipulation and proposed order to administratively stay the execution of the Remand Order up to and including April 6, 2026, and to adopt a shortened briefing schedule. (ECF Nos. 44, 47) The parties further stipulated to extend the state court issued-*ex parte* temporary restraining order to April 6, 2026. (*Id.*) The Board responded (ECF No. 50 ("Response")) and Polymarket replied (ECF No. 52 ("Reply")).

## II.      DISCUSSION

Polymarket argues that the Court should stay the Remand Order because (1) Rule 62(a)'s 30-day automatic stay applies to the Remand Order, and (2) the *Nken* factors weigh in favor of granting a stay until the Ninth Circuit decides whether the action was properly removed. (ECF No. 46 at 7.) The Court will address each argument in turn.

### A.      Rule 62(a)

Polymarket initially sought an automatic 30-day stay under Federal Rule of Civil Procedure 62(a). (ECF No. 46 at 7-8.) However, in its Reply, Polymarket clarifies that it no longer requires this relief because the "Court has already granted the relief [Polymarket] sought under Rule 62(a)," referring to the Court's order granting the parties' stipulation to an administrative stay of the Court's Remand Order (ECF No. 47). (ECF No. 52 at 4.) Accordingly, the Court need not address Polymarket's request for an automatic stay under Rule 62(a).[3]

### B.      *Nken* Factors

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant. *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted). In deciding whether to grant a stay, the Court must consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

[3]Though the Court need not consider the parties' arguments as to Rule 62(a), the Court finds that the Rule does not apply. Rule 62(a) provides, in pertinent part, "execution on a judgment . . . [is] stayed for 30 days after its entry, unless the Court rules otherwise." Fed. R. Civ. P. 62(a). But the Court has not entered judgment on the merits of this case. In issuing the Remand Order, the Court narrowly considered the parties' arguments as to the Court's jurisdiction under the federal officer removal statute and federal question jurisdiction. Accordingly, Polymarket may only seek a stay pending appeal under the *Nken* factors.

*Id.* at 434. The first two factors are the most critical, and once a stay applicant satisfied these factors, the Court assesses the final two factors, which "merge when the Government is the opposing party." *Id.* at 434-35. Stays pending appeal are discretionary and are an "extraordinary remedy." *See California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 768-69 (9th Cir. 2025) (citation modified) *cert. denied sub nom. Express Scripts, Inc. v. California*, 2026 WL 79931 (U.S. Jan. 12, 2026).

Polymarket contends that it has raised serious legal questions that go to the scope of the federal officer removal statute and federal question jurisdiction. (ECF No. 46 at 8-13.) The Board counters that Polymarket is not likely to succeed on appeal, because the Court considered and rejected these grounds for removal. (ECF No. 50 at 8-12.) The Court agrees with the Board. Polymarket repeats the same arguments the Court previously rejected in the Remand Order. (ECF No. 41.) The Court incorporates by reference the pertinent portions of the Remand Order here and rejects Polymarket's arguments that it is likely to prevail on the merits for the reasons discussed therein. This *Nken* factor counsels against granting a stay.

Next, Polymarket asserts that a stay is necessary to prevent irreparable injury, because without a stay they would be "forced to engage in parallel litigation by simultaneously briefing jurisdictional issues in the Ninth Circuit and merits issues in the Nevada state court." (ECF No. 46 at 13.) But litigating in state court is not a harm, let alone an irreparable harm. Indeed, if a defendant were entitled to a stay merely because it would have to litigate in state court and appeal the remand order in the court of appeal at the same time, a defendant challenging remand under the federal officer removal statute would automatically be entitled to a stay pending appeal. The Ninth Circuit recently rejected this argument. *See Express Scripts,* 139 F.4th 763 (finding automatic stay does not apply to appeal district court's order remanding a case removed under the federal officer removal statute and that the discretionary stay factors under *Nken* still govern the court's discretion.)

In their Reply, Polymarket argues that it will suffer irreparable injury because removal rights under Section 1442 are especially important to the federal government, and allowing the case to proceed in state court would risk defeating the purpose of an appeal. (ECF No. 52 at 8-9.) But this too does not cause irreparable harm. As discussed above, Polymarket is unlikely to prevail on the merits on its federal officer removal argument. Moreover, state and federal courts "each provide forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanism," and "permitting early state litigation in state court would not preclude a defendant from returning to federal court post-appeal." *Express Scripts,* 139 F.4th at 770, 771. The Court finds that any harm that may result does not rise to the level of irreparable harm that would tip in the balance in favor of a stay.

Having found that the critical two factors in granting a stay have not been satisfied, the Court will turn briefly to the remaining factor. Polymarket claims that the public interest is served by concentrating resources on litigation in the proper forum and that a stay would not harm the Board. (ECF No. 46 at 14-15.) The Board counters that a stay would harm it, pointing to the State's interest in enforcing its statutes and to Chief Judge Gordon's recent analysis of irreparable harm in a case raising similar issues, *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575-APG-BNW, 2025 WL 3286282 (D. Nev. Nov. 24, 2025). (ECF No. 50 at 15.) The Court agrees with the Board and finds that the final *Nken* factor does not favor granting a stay.

In sum, the Court finds that Polymarket has not made a showing as to the relevant *Nken* factors that would warrant such "an intrusion into the ordinary processes of administrative and judicial review." *Nken*, 556 U.S. at 427 (internal quotation marks and citations omitted). The Court thus denies Polymarket's Motion.

## III.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Polymarket's motion for stay pending appeal (ECF No. 46) is denied.

It is further ordered that this case is remanded to the First Judicial Court of Nevada, Carson City. However, the Clerk of Court is directed not to mail this order to the First Judicial Court of Nevada, Carson City until April 6, 2026 in light of the Court's order granting the parties' stipulation. (ECF No. 47 at 4.)

The Clerk of Court is directed to close this case.

DATED THIS 12th Day of March 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

**Order Granting Stipulation Modifying Briefing Schedule on Defendants' Motion
to Stay Pending Appeal
Dist. Ct. Doc. 47 (filed March 4, 2026)**

Mark A. Hutchison (Nev. Bar No. 4639)
Joseph C. Reynolds (Nev. Bar No. 8630)
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746
(*designated local counsel*)

Adam P. Laxalt (Nev. Bar No. 12426)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

Orin Snyder
(*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
OSnyder@gibsondunn.com
(212) 351-4000

*Counsel for Defendants BLOCKRATIZE
INC. d/b/a POLYMARKET; QCX LLC d/b/a
POLYMARKET US; ADVENTURE ONE
QSS INC. d/b/a POLYMARKET*
(Additional counsel listed on signature block.)

Jessica E. Whelan (Nev. Bar No. 14781)
John S. Michela (Nev. Bar No. 8189)
Sabrena K. Clinton (Nev. Bar No. 6499)
STATE OF NEVADA
OFFICE OF THE ATTORNEY GENERAL
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov
(702) 486-3420

*Counsel for Plaintiff STATE OF NEVADA
ex rel. NEVADA GAMING CONTROL
BOARD*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>Plaintiffs,<br><br>v.<br><br>BLOCKRATIZE INC. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; ADVENTURE ONE QSS INC. d/b/a Polymarket,<br><br>Defendants. | Case No.: 3:26-cv-00089-MMD-CLB<br><br>[Nev. Dist. Ct. No. 26OC000121B]<br><br>STIPULATION AND ORDER MODIFYING BRIEFING SCHEDULE ON DEFENDANTS' MOTION TO STAY PENDING APPEAL<br><br>(FIRST REQUEST) |

Pursuant to Local Rules IA 6-1, IA 6-2, and 7-1, Plaintiff and Defendants, through their respective counsel, submit the following Stipulation and Order Modifying Briefing Schedule on Defendants' Motion to Stay Pending Appeal.  This is the first stipulation for a modification of the briefing schedule on Defendants' motion to stay pending appeal.

1.     On January 29, 2026, the First Judicial District Court of the State of Nevada granted Plaintiff's Application for an Ex Parte Temporary Restraining Order.  The order enjoins Defendants from "operating or offering a market in Nevada that involves 'event-based contracts' without a valid license issued in accordance with Chapter 463 of Nevada Revised Statutes." Dkt. 2-4, at 72.  The *ex parte* temporary restraining order is currently set to expire on March 6, 2026. Dkt. 38.

2.     On February 5, 2026, Defendants removed this case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1442(a)(1), and 1446.

3.     On March 2, 2026, the Court entered an order remanding the case to state court. Dkt. 41.  Because the case was "removed pursuant to section 1442," Defendants have the statutory right to appeal the remand order, 28 U.S.C. § 1447(d), and they intend to exercise that right.

4.     In the meantime, the Court retains "jurisdiction to review"—and stay—"that order," even if the remand order has been "transmitt[ed] . . . to the state court." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1065 (9th Cir. 2021); *see Perez-Reyes v. Nat'l Distrib. Ctrs., LLC*, 2018 WL 7077183, at *1 (C.D. Cal. Feb. 8, 2018) (collecting cases).

5.     On March 2, 2026, Defendants therefore filed an emergency motion for an administrative stay pending the Court's resolution of Defendants' forthcoming motion for a stay pending appeal to the Ninth Circuit.  Dkt. 42.

6.     Defendants intend to file a motion for stay pending appeal later today, March 3, 2026.  On an ordinary briefing schedule, Plaintiff's opposition brief would be due March 17, 2026, with Defendants' reply due March 24, 2026.

7.     Plaintiff wishes to have the motion resolved before the expiration of the *ex parte* temporary restraining order, but that would not be possible under the ordinary schedule.  And it

2

1    would impose an unnecessary burden on the Court to resolve the motion by March 6.

2        8.    So, to ensure that the parties have adequate time to brief—and the Court has

3    adequate time to consider—Defendants' motion for a stay pending appeal, the parties have

4    agreed that good cause exists for a modest abbreviation to the ordinary briefing schedule.

5        9.    Under the agreed abbreviated briefing schedule, the parties stipulate to the

6    following deadlines:

7            a.  Defendants will file their motion for a stay pending appeal today (March 3,

8                2026).

9            b.  Plaintiff will file its opposition to the stay motion on or before March 6, 2026.

10            c.  Defendants will file any reply in support of the stay motion on or before

11                March 9, 2026.

12        10.    Solely to avoid the burdens associated with an emergency motion and to ensure

13    that this Court—and, if necessary, the Ninth Circuit—have sufficient time to give due

14    consideration to the stay motion, Defendants have consented, pursuant to Fed. R. Civ.

15    P. 65(b)(2), to a further extension of the *ex parte* temporary restraining order, through April 6,

16    2026.

17        11.    For the same reasons, Plaintiff has consented to an administrative stay of this

18    Court's remand order up to and including April 6.

19        12.    The parties respectfully request that the Court resolve the motion to stay pending

20    appeal by March 12, 2026.  If the Court denies the motion, a ruling by March 12 would ensure

21    that the Ninth Circuit has sufficient time to receive briefing and rule on a stay request before the

22    *ex parte* temporary restraining order expires on April 6.  *See* 9th Cir. R. 27-3 (Ninth Circuit stay

23    motions usually take a minimum of 21 days from the start of briefing to resolution).

24        13.    Defendants consent to this extension without prejudice to—and while expressly

25    reserving—any defenses and objections, including those based on improper service and personal

26    jurisdiction.  Plaintiff agrees not to rely on Defendants' consent to the extension or on this

27    Stipulation as a basis for disputing the validity of Defendants' defenses and objections.

28        14.    Similarly, Plaintiff agrees to the terms of this stipulation without prejudice to—

3

1    and while expressly reserving—any challenge to the jurisdiction of this Court over the civil

2    enforcement action brought by Plaintiff in state district court.

3        15.    The parties respectfully request that the Court direct the Clerk of Court not to

4    mail the remand order to state court pending further order of the Court, and no earlier than

5    April 6, 2026.[1]

6        16.    For all of the aforementioned reasons, the parties stipulate and request the Court

7    issue an alternative briefing schedule for Defendants' motion to stay pending appeal, as set forth

8    herein, and retain or recall the remand order.

9

10

11                               IT IS SO ORDERED:

12                               _____

13                               UNITED STATES DISTRICT JUDGE

14                               DATED: _March 4, 2026_____

15

16

17

18

19

20

21

22

23

24

25    _____

      [1] Alternatively, if the Clerk has already mailed the order, the parties respectfully request that the
26    Court "enter an order recalling the remand and" direct the Clerk to "notify the [state court] that
      the district court has resumed jurisdiction over the action" for the time being. *Acad. of Country*
27    *Music*, 991 F.3d at 1065; *see also, e.g.*, *Town of Pine Hill v. 3M Co.*, 2025 WL 994187, at *1
      (S.D. Ala. Apr. 2, 2025) (recalling case remanded before defendant could file its "motion to stay
28    the court's remand order pending appeal"); *Bank of Am., N.A. v. El Paso Nat. Gas Co.*, 2017 WL
      9478457, at *3 (W.D. Okla. Jan. 12, 2017) (same).

                                        4

| | | |
|---|---|---|
| 1 | HUTCHISON & STEFFEN, PLLC | OFFICE OF THE NEVADA ATTORNEY GENERAL |
| 2 | | |
| 3 | _/s/ Joseph C. Reynolds_ | _/s/ Jessica E. Whelan_ |
| 4 | Mark A. Hutchison (Nev. Bar No. 4639) | Jessica E. Whelan (Nev. Bar. No. 14781) |
| | Joseph C. Reynolds (Nev. Bar No. 8630) | John S. Michela (Nev. Bar. No. 8189) |
| 5 | 100 West Liberty Street, Suite 765 | Sabrena K. Clinton (Nev. Bar. No. 6499) |
| | Reno, Nevada 89501 | 1 State of Nevada Way, Suite 100 |
| 6 | mhutchison@hutchlegal.com | Las Vegas, NV 89119 |
| | jreynolds@hutchlegal.com | jwhelan@ag.nv.gov |
| 7 | (775) 853-8746 | jmichela@ag.nv.gov |
| 8 | | sclinton@ag.nv.gov |
| | Adam P. Laxalt (Nev. Bar No. 12426) | (702) 486-3420 |
| 9 | COOPER & KIRK, PLLC | |
| | 1523 New Hampshire Avenue NW | _Counsel for Plaintiff_ |
| 10 | Washington, D.C. 20036 | |
| 11 | alaxalt@cooperkirk.com | |
| | (202) 220-9600 | |
| 12 | | |
| 13 | Orin Snyder (_pro hac vice_) | |
| | Matt Benjamin (_pro hac vice_) | |
| 14 | GIBSON, DUNN & CRUTCHER LLP | |
| | 200 Park Avenue | |
| 15 | New York, New York 10166 | |
| 16 | OSnyder@gibsondunn.com | |
| | MBenjamin@gibsondunn.com | |
| 17 | (212) 351-4000 | |
| 18 | Thomas H. Dupree Jr. (_pro hac vice_) | |
| 19 | Jacob T. Spencer (_pro hac vice_) | |
| | Adam I. Steene (_pro hac vice_) | |
| 20 | GIBSON, DUNN & CRUTCHER LLP | |
| | 1700 M Street NW | |
| 21 | Washington, D.C. 20036 | |
| 22 | TDupree@gibsondunn.com | |
| | JSpencer@gibsondunn.com | |
| 23 | ASteene@gibsondunn.com | |
| | (202) 955-8500 | |
| 24 | | |
| 25 | _Counsel for Defendants Blockratize Inc._ | |
| | _d/b/a Polymarket; QCX LLC d/b/a_ | |
| 26 | _Polymarket US; and ADVENTURE ONE_ | |
| | _QSS INC. d/b/a Polymarket_ | |
| 27 | | |
| 28 | | |

5

**District of Nevada Remand Order**
**Dist. Ct. Doc. 41 (filed March 2, 2026)**

1

2

3                    UNITED STATES DISTRICT COURT

4                        DISTRICT OF NEVADA

5                                * * *

6   STATE OF NEVADA ex rel. NEVADA          Case No. 3:26-cv-00089-MMD-CLB
    GAMING CONTROL BOARD,
7                                                        ORDER
                                Plaintiff,
8           v.

9   BLOCKRATIZE INC., *et al.*,

10                             Defendants.

11  **I.      SUMMARY**

12          Plaintiff State of Nevada ex rel. Nevada Gaming Control Board ("Board") sued

13  Blockratize Inc. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; and Adventure One

14  QSS Inc. d/b/a Polymarket (collectively, "Polymarket") in state court for alleged violations

15  of State of Nevada gaming laws. (ECF No. 1-3.) Polymarket removed the case to this

16  Court. (ECF No. 1 ("Petition").) The Board now moves to remand, contending that

17  Defendants' two bases for removal—jurisdiction under the federal officer removal statute

18  and federal question jurisdiction—are meritless. (ECF No. 7 ("Motion").)[1] The Court has

19  considered the Board's Motion and the parties' briefing, and the Court also held a hearing

20  on February 24, 2026.[2] (ECF No. 36 ("Hearing").) Because the Court finds that

21  Polymarket does not satisfy the "acting under" requirement for federal officer removal and

22  the Board's claims arise under state law, thus depriving this Court of federal question

23  jurisdiction, the Court will grant remand.

24

25

26  _____

27          [1]Defendants responded (ECF No. 15 ("Response")) and Plaintiff replied (ECF No. 20 ("Reply")).

28          [2]The Court held a joint hearing in a related removed case where the Board filed a motion to remand, *See Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC,* No. 2:26-cv-00406-MMD-MDC.

## II.    BACKGROUND

Polymarket operates a federally licensed derivatives exchange and prediction market that offers event contracts for sale available to persons in Nevada. (ECF Nos. 1-3 at 4; 1 at 2.) Arising from these operations, the Board filed a civil enforcement action in state court on January 16, 2026, seeking to enjoin Polymarket's gaming operations in Nevada until Polymarket obtained Nevada gaming licenses and complied with Nevada's gaming laws. (ECF No. 1-3 at 11-14.) The Board's Complaint alleges claims that Polymarket's market violates NRS §§ 436.160, 463.350, 465.086 and 465.092, and sought declaratory and injunctive relief under NRS §§ 463.343, 463.346 and 30.030. (*Id.* at 8-14.)

On January 29, 2026, the state court issued a 14-day Temporary Restraining Order and set a hearing on the Board's motion for a preliminary injunction on February 11, 2026. (ECF No. 2-4 at 62-70.) On February 5, 2026, Polymarket filed their Petition. (ECF No. 1.) The Board then filed the Motion. (ECF No. 7.) The Court subsequently granted the parties' stipulation for a modified briefing schedule on the Motion. (ECF No. 23.)

## III.    DISCUSSION

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, a defendant may remove a suit filed in state court to federal court only if the federal court would have had original jurisdiction over the suit at commencement of the action. *See* 28 U.S.C. § 1441(a). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1113 (9th Cir. 2000).

2

1    Polymarket asserts two grounds for removal: federal officer removal under 28

2  U.S.C. § 1442(a)(1) and federal question jurisdiction under the substantial federal

3  question doctrine. (ECF No. 1 at 7-15.) The Court addresses each ground in turn.

4    **A.    Federal Officer Removal**

5    The federal officer removal statute authorizes the removal of an action against

6  "[t]he United States or any agency thereof or any officer (or any person acting under that

7  officer) of the United States or of any agency thereof, in an official or individual capacity,

8  for or relating to any act under the color of such office. . . ." 28 U.S.C. § 1442(a)(1). The

9  statute was intended to protect federal officers and agents working within the scope of

10 their authority from interference with their official duties through state-court litigation. *See*

11 *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). Although the statute is to be

12 "liberally construed," the Supreme Court has noted that its "broad language is not

13 limitless." *Id.* at 147.

14    To invoke federal officer removal, a defendant must satisfy a three-part test by

15 demonstrating that "(a) it is a 'person' within the meaning of the statute; (b) there is a

16 causal nexus between its actions, taken pursuant to a federal officer's directions, and

17 plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelitad, Inc. v. Insitu,*

18 *Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Durham v. Lockheed Martin Corp.*, 445

19 F.3d 1247, 1251). For a private person to satisfy the second prong, or the "acting under"

20 requirement, their actions must involve "an effort to *assist,* or to help *carry out,* the duties

21 or tasks of the federal superior." *Watson*, 551 U.S. at 152.  This requires more than simple

22 compliance with a regulation, "even if the regulation is highly detailed and even if the

23 private firm's activities are highly supervised and monitored." *See id.* at 152-53.

24    The parties dispute the second factor—whether Polymarket is "acting under" a

25 federal officer.[3] Polymarket contends that it is because the Commodity Futures Trading

26 Commission ("CFTC") approved Polymarket as a designated contract market ("DCM")

27

28    _____

    [3]Accordingly, the Court does not address the first and third factors.

3

1  under the Commodity Exchange Act ("CEA"). (ECF No. 1 at 5.) In operating its DCM,

2  Polymarket acts as a self-regulatory organization that exercises CFTC delegated

3  authority. (ECF No. 1 at 7-12.) Polymarket argues that while it "must comply with the

4  CEA's 23 core principles and all CFTC rules. . ." it does more than mere compliance

5  because it assists the CFTC in accomplishing tasks that the CFTC would otherwise have

6  to perform. (ECF No. 1 at 8-9.) Polymarket points to several of its delegated functions,

7  including that it "'must establish, monitor and enforce compliance with the rules of the

8  contract market' including 'access requirements,' 'the terms and conditions of any

9  contracts to be traded,' and 'rules prohibiting abusive trade practices on the contract

10  market.'" (ECF No. 15 at 12.) The Board argues that Polymarket is merely a private entity

11  conducting private business that is subject to federal regulation, and compliance with

12  federal regulation does not create federal-officer jurisdiction. (ECF No. 7 at 10-15.)

13  Moreover, it insists that Polymarket's ability to self-certify its contracts as CEA compliant

14  is not a basis for federal officer removal in the Ninth Circuit. (*Id.* at 12.)

15       As an initial matter, the Court notes that the relevant inquiry does not concern all

16  of Polymarket's delegated functions, only the functions relevant to the Board's claims.

17  *See Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d

18  1237, 1245 (9th Cir. 2017) (noting that for the second prong of the federal officer removal

19  test "[t]he only real question. . . is whether, when seeking subrogation, [defendant] 'acted

20  under' a federal officer."). Thus, the Court does not consider the "broad array of functions"

21  Polymarket alleges it has been delegated. (ECF No. 1 at 10.) Rather, the Court looks

22  narrowly at functions relevant to the Board's claims; here that is whether Polymarket has

23  acted under a federal officer by self-certifying that its contracts comply with the CEA and

24  by regulating access to its contracts.[4]

25  _____

26       [4]During the Hearing, the Court asked Polymarket's counsel to clarify which of their self-regulating functions are relevant to the claims in this case. Polymarket's counsel

27  represented to the Court that the relevant function is access, because the Board's enforcement action essentially alleges that Polymarket unlawfully allows persons in Nevada access to its contracts, and Polymarket has been delegated federal authority in

28  setting access requirements, (ECF Nos. 36; 15 at 17.)

4

1        The Court agrees with the Board that the delegated functions Polymarket identified

2    demonstrate compliance, not assistance for Polymarket to fall within the scope of "acting

3    under." The Ninth Circuit's reasoning in *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981

4    (9th Cir. 2019) is particularly instructive here. In *Riggs*, the court held that the district court

5    did not err in finding that the defendant helicopter manufacturer was not "acting under" a

6    federal officer in issuing certificates for FAA approval of aircraft design. The court

7    reasoned that the defendant "'must perform all delegated functions *in accordance with* a

8    detailed, *FAA-approved* procedures manual'" and "[l]anguage such as 'in accordance

9    with' and 'FAA-approved' suggest a relationship based on compliance." *Id.* at 989.

10    Moreover, the court found it significant that the FAA had the authority to rescind actions

11    taken in the certification process. *Id.*  Here, Polymarket argues that it can self-certify its

12    own contracts, but it also admits that the CFTC retains authority to "investigate, stay or

13    amend" the contract after it has been listed, and that the CFTC has the "discretion to

14    prohibit the listing." (ECF No. 1 at 11.) In its Response, Polymarket attempts to

15    underscore that such self-certification is permissible only because it possesses a form of

16    delegated authority. (ECF No. 15 at 17.) The Court finds this argument unavailing under

17    *Riggs*. Given the CFTC's ultimate oversight and control over Polymarket, the Court finds

18    that Polymarket's delegated function of self-certifying contracts "fit[s] squarely within the

19    precept of mere compliance within regulatory standards and outside the 'acting under'

20    provision of 1442(a)(1)." *See Riggs*, 939 F.3d at 989, citing *Watson*, 551 U.S. at 153.

21        The Court finds that the same reasoning applies as to Polymarket's argument that

22    it has a self-regulating function of "establish[ing], monitor[ing] and enforc[ing] compliance

23    with the rules of the contract market "including access requirements" as to third parties.[5]

24    (ECF No. 15 at 19.) But during the Hearing, Polymarket's counsel clarified, in response

25    to the Court's question, that the CFTC has the ability to override Polymarket's decisions

26

27         [5]The Board counters that this case involves Polymarket's "own contracts" which

28    the Board claims violate Nevada gaming laws, not Polymarket's delegated authority to regulate third party contracts. (ECF No. 20 at 3.)

5

1    regarding access. Because Polymarket is "duty-bound to follow" CFTC's requirements,

2    Polymarket's delegated functions fall within the "simple compliance with the law"

3    circumstance, analogous to the helicopter manufacturer in *Riggs* who "was duty-bound

4    to follow the prescriptive rules set forth by the FAA." *See Riggs*, 939 F.3d at 989 (noting

5    the significance that the FAA had the authority to rescind any action taken by the

6    defendant helicopter manufacturer in the certification process); *cf. Goncalves,* 865 F.3d

7    at 1247 (finding that the health insurance carrier "go[es] well 'beyond simple compliance

8    with the law and help[s] officers fulfill other basic government tasks'" because of its

9    delegated authority to seek subrogation, the importance of subrogation recoveries and its

10   obligations to "make reasonable efforts" to "pursue subrogation claims," including

11   deciding "when filing suit in federal court is a wise decision."). Thus, Polymarket fails to

12   satisfy the "acting under" prong necessary to invoke the federal removal statute.

13       In sum, the Court finds Polymarket is not "acting under" the CFTC by self-certifying

14   contracts, nor by regulating access to its market. Accordingly, the Court finds that

15   Polymarket is unable to avail itself of the federal officer removal statute.

16       **B.    Federal Question Jurisdiction**

17       The Court has federal question jurisdiction under 28 U.S.C. § 1331 as to "only

18   those cases in which a well-pleaded complaint establishes either that the federal law

19   creates the cause of action or that the plaintiff's right to relief necessarily depends on

20   resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers*

21   *Vacation Tr.*, 463 U.S. 1, 27-28 (1983). On "rare occasions" federal question jurisdiction

22   may exist for suits containing only state law claims. *Royal Canin U. S. A., Inc. v.*

23   *Wullschleger*, 604 U.S. 22, 26 (2025). The Supreme Court has articulated a four-factor

24   test for determining whether a federal court may exercise federal question jurisdiction

25   over a state law claim. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.

26   308, 314 (2005). This Court may exercise jurisdiction if "a federal issue is: (1) necessarily

27   raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court

28   without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568

6

1   U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314). The Supreme Court has often held

2   that federal question jurisdiction is proper where the vindication of a right under state law

3   necessarily turned on construction of federal law. *See Hornish v. King Cnty.*, 899 F.3d

4   680, 688 (9th Cir. 2018) (holding the *Grable* factors were met where plaintiff-appellants

5   sought declaratory relief that the county had acquired certain property rights under the

6   federal Trails Act).

7         Polymarket raises two arguments as to how the Board's claims necessarily raise

8   a substantial federal issue: (1) the Board's claims "necessarily require proof that the event

9   contracts at issue are illegal gambling—and those claims cannot be adjudicated without

10  deciding disputed and substantial questions of federal law"; and (2) the Board's claims

11  turn on the interpretation of federal law embedded in one of the Nevada statutes under

12  which the Board seeks relief. (ECF No. 1 at 13.) The Board counters that the former is

13  essentially a preemption defense and preemption defense is not a basis for removal, and

14  that the Nevada statute in question raises no interpretive questions of federal law. (ECF

15  No. 7 at 16-17.) In its Response, Polymarket reiterates its argument that the state law

16  requires interpretation of federal law, citing to *Georgia Gambling Recovery LLC v. Kalshi*

17  *Inc.*, No. 4:25-CV-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), as an example

18  of how the state's claim for relief relies upon an interpretation of the CEA and the CFTC's

19  jurisdiction. (ECF No. 17-19.)

20        The Court agrees with the Board that a federal issue is not necessarily raised here.

21  Polymarket cites to a single case from an out of circuit district court, *Georgia Gambling*

22  *Recovery*, 2026 WL 279375, to support its proposition that the Board's claims rely on

23  interpretation of the CEA. *Georgia Gambling* is neither binding nor persuasive, in large

24  part because the underlying state law is materially different. In *Georgia Gambling*, a

25  private plaintiff brought a claim under a Georgia statute to recover illegal gambling losses.

26  The state statute provides, "all '[g]ambling contracts are void' and authorizes 'any person'

27  to recover '[m]oney paid or property delivered upon a gambling consideration'." *Id.* at *2

28  (quoting O.C.G.A. § 13-8-3). But as the Board points out in its Motion, for the plaintiff to

7

1   prevail in that case, it had to prove that the challenged contracts were illegal under federal

2   law. *See id.* at *3; (ECF No. 7 at 18.) Here, the Nevada statutes at issue require no

3   interpretation of federal law as the claims are that Polymarket offers event and sports-

4   based event contracts that are wagers subject to Nevada's gaming laws. (ECF No. 1-3.)

5         Moreover, Polymarket points to only one statutory provision to argue that the

6   Board's state law case turns on the interpretation federal law:

> *Except as otherwise provided by law*, it is unlawful for a person to receive, directly or indirectly, any compensation or reward, or any percentage or share of the money or property played, for accepting any bet or wager upon the result of any event held at a track involving a horse or other animal, sporting event or other event, as defined by regulations adopted by the Nevada Gaming Commission, without having first procured, and thereafter maintaining in effect, all federal, state, county and municipal gaming licenses as required by statute, regulation or ordinance or by the governing body of any unincorporated town.

12   NRS § 465.086(1) (emphasis added). Polymarket argues that "[e]xcept as otherwise

13   provided by law" incorporates federal law, as does the statute's incorporation of "federal.

14   . . licenses." (ECF No. 15 at 24-25.) But here, unlike in *Georgia Gambling*, the statute

15   does not require a determination that the contracts are void under federal law.[6] The Board

16   is not challenging any aspect of Polymarket's federal licenses; its claims strictly relate to

17   Polymarket's failure to obtain the requisite Nevada licenses and comply with other

18   Nevada specific requirements. Additionally, as the Court explained during the Hearing,

19   the Court finds persuasive the Board's argument that "law" as used in NRS § 465.086(1)

20   refers to the law of Nevada.[7] (ECF Nos. 20 at 8; ECF No. 36.)

21         The Court now turns to Polymarket's remaining argument that federal law is

22   necessarily raised because the "core question is whether Nevada may. . . impose its own

---

[6]Moreover, the Court rejects Polymarket's argument that the Nevada Supreme Court has interpreted identical language to refer to federal and state law. (ECF No. 15 at 24.) In *Edwards v. Emperor's Garden Rest.,* 130 P.3d 1280 (Nev. 2006), the court was interpreting the federal statute of limitations for a private cause of action based on a TCPA claim, which necessarily deferred to the state's statute of limitations.

[7]The Court declines to address the Board's alternative argument, citing to *Cunningham v. Cornell Univ.,* 604 U.S. 693 (2025), that even if the phrase refers to federal law, it provides for an affirmative defense, not an element of the Board's claims. (ECF No. 7 at 17.)

8

1   licensing and enforcement regime on federally licensed derivates exchanges." (ECF No.

2   1 at 13.) The Court agrees with the Board that this is essentially a preemption argument

3   raised as a defense. (ECF No. 7 at 16.) But federal issue raised as an anticipated

4   preemption defense is not sufficient to give rise to federal question jurisdiction. S*ee*

5   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Negrete v. City of Oakland*, 46 F.4th

6   811, 819-20 (9th Cir. 2022) (internal quotation marks and citation omitted) ("A defense

7   that raises a federal question is inadequate to confer federal question jurisdiction because

8   whether an issue is necessarily raised depends on if it is an essential element of a

9   plaintiff's claim.")

10         In sum, the Court finds that the Board's claims do not necessarily raise an issue of

11   federal law under *Grable*.[8] The Court thus lacks "arising under" jurisdiction over the

12   Board's state law claims. Accordingly, removal was improper, compelling remand.

13         **C.    Attorneys' Fees**

14         The Board also requests an award of attorneys' fees and costs incurred in seeking

15   remand. "An order remanding the case may require payment of just costs and any actual

16   expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. §

17   1447(c). The Court cannot find that the grounds for removal were objectively

18   unreasonable to warrant imposition of fees. *See Martin v. Franklin Cap. Corp.*, 546 U.S.

19   132, 136 (2005). Accordingly, the Court denies the Board's request for attorneys' fees

20   and costs.

21   **IV.    CONCLUSION**

22         The Court notes that the parties made several arguments and cited to several

23   cases not discussed above. The Court has reviewed these arguments and cases and

24   determines that they do not warrant discussion as they do not affect the outcome of the

25   motion before the Court.

26

27   _____

28         [8]Because the Court finds that the Board's case does not necessarily raise an issue
of federal law, it need not address the remaining *Grable* factors.

9

1    It is therefore ordered that the Board's motion to remand to state court (ECF No.

2    7) is granted. This action is remanded to the First Judicial District Court in Carson City,

3    Nevada.

4    It is further ordered that the Board's request for attorneys' fees is denied.

5    The Clerk of Court is directed to close this case.

6    DATED THIS 2nd Day of March 2026.

7

8    _____

    MIRANDA M. DU

9    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

**Order Granting Second Stipulation to Extend Ex Parte TRO Pending Resolution of Plaintiff's Motion to Remand**
**Dist. Ct. Doc. 38 (filed February 26, 2026)**

Mark A. Hutchison (Nev. Bar No. 4639)
Joseph C. Reynolds (Nev. Bar No. 8630)
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746
(*designated local counsel*)

Adam P. Laxalt (Nev. Bar No. 12426)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

Orin Snyder
(*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
OSnyder@gibsondunn.com
(212) 351-4000

*Counsel for Defendants BLOCKRATIZE
INC. d/b/a POLYMARKET; QCX LLC d/b/a
POLYMARKET US; ADVENTURE ONE
QSS INC. d/b/a POLYMARKET*
Additional counsel listed on signature block

Jessica E. Whelan (Nev. Bar No. 14781)
John S. Michela (Nev. Bar No. 8189)
Sabrena K. Clinton (Nev. Bar No. 6499)
STATE OF NEVADA
OFFICE OF THE ATTORNEY GENERAL
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov
(702) 486-3420

*Counsel for Plaintiff STATE OF NEVADA
ex rel. NEVADA GAMING CONTROL
BOARD*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD, <br><br> Plaintiffs, <br><br> v. <br><br> BLOCKRATIZE INC. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; ADVENTURE ONE QSS INC. d/b/a Polymarket, <br><br> Defendants. | Case No.: 3:26-cv-00089-MMD-CLB <br><br> [Nev. Dist. Ct. No. 26OC000121B] <br><br> ORDER GRANTING SECOND STIPULATION TO EXTEND EX PARTE TEMPORARY RESTRAINING ORDER PENDING RESOLUTION OF PLAINTIFF'S MOTION TO REMAND <br><br> (SECOND REQUEST) |

Pursuant to Local Rules IA 6-1, IA 6-2, and 7-1, Plaintiff and Defendants, through their respective counsel, submit the following Second Stipulation and Order to Extend Ex Parte Temporary Restraining Order Pending Resolution of Plaintiff's Motion to Remand.  This is the second stipulation related to Plaintiff's Motion to Remand.

1.    On January 29, 2026, the First Judicial District Court of the State of Nevada granted Plaintiff's Application for an *Ex Parte* Temporary Restraining Order.  The order enjoins Defendants from "operating or offering a market in Nevada that involves 'event-based contracts' without a valid license issued in accordance with Chapter 463 of Nevada Revised Statutes." Dkt. 2-4, at 86.  By its terms, the *ex parte* temporary restraining order was set to expire on February 12, 2026.

2.    On February 5, 2026, Defendants removed this case to this Court pursuant 28 U.S.C. §§ 1331, 1441, 1442(a)(1), and 1446.

3.    On February 9, 2026, Plaintiff filed a Motion to Remand.  Dkt. 7.

4.    The parties filed a Stipulation Modifying Briefing Schedule on Plaintiff's Motion to Remand.  Dkt. 10.  The Court granted that modification.  Dkt. 23.

5.    In accordance with the stipulation, Defendants filed their Response to the Motion to Remand on February 13, 2026.  Dkt. 15.  And Plaintiff filed its Reply on February 18, 2026. Dkt. 20.

6.    On February 24, 2026, the Court held a hearing on Plaintiff's Motion to Remand.

7.    Solely to ensure that the Court could resolve the motion on a reasonable schedule, Defendants consented in the first stipulation, pursuant to Fed. R. Civ. P. 65(b)(2), to a 14-day extension of the *ex parte* temporary restraining order through February 26, 2026.  Dkt. 10 ¶ 10.

8.    At the February 24, 2026, hearing, Plaintiff represented that it would file an emergency motion if the Court did not rule on the remand motion before the expiration of the *ex parte* temporary restraining order on February 26, 2026.  The Court explained that, given the other important matters on its docket, it could not guarantee it would issue a decision before February 26, 2026.

9.    Solely to ensure that the Court has sufficient time to give due consideration to the

2

Motion to Remand and to avoid the burdens on the Court associated with an emergency motion, Defendants have consented, pursuant to Fed. R. Civ. P. 65(b)(2), to a further extension of the *ex parte* temporary restraining order, through March 6, 2026.

10.    Defendants consent to this extension without prejudice to—and while expressly reserving—any defenses and objections, including those based on improper service and personal jurisdiction.   Plaintiff agrees not to rely on Defendants' consent to the extension or on this Stipulation as a basis for disputing the validity of Defendants' defenses and objections.

11.    Similarly, Plaintiff agrees to the terms of this stipulation without prejudice to—and while expressly reserving—any challenge to the jurisdiction of this Court over the civil enforcement action brought by Plaintiff in state district court.

IT IS SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

DATED: February 26, 2026

3

| | |
|---|---|
| 1 | HUTCHISON & STEFFEN, PLLC |
| 2 | |
| 3 |   */s/ Joseph C. Reynolds* |
| 4 | Mark A. Hutchison (Nev. Bar No. 4639) |

HUTCHISON & STEFFEN, PLLC

  */s/ Joseph C. Reynolds*
Mark A. Hutchison (Nev. Bar No. 4639)
Joseph C. Reynolds (Nev. Bar No. 8630)
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746

Adam P. Laxalt (Nev. Bar No. 12426)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

Orin Snyder (*pro hac vice*)
Matt Benjamin (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
OSnyder@gibsondunn.com
MBenjamin@gibsondunn.com
(212) 351-4000

Thomas H. Dupree Jr. (*pro hac vice*)
Jacob T. Spencer (*pro hac vice*)
Adam I. Steene (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
TDupree@gibsondunn.com
JSpencer@gibsondunn.com
ASteene@gibsondunn.com
(202) 955-8500

*Counsel for Defendants Blockratize Inc.*
*d/b/a Polymarket; QCX LLC d/b/a*
*Polymarket US; and ADVENTURE ONE*
*QSS INC. d/b/a Polymarket.*

OFFICE OF THE NEVADA ATTORNEY GENERAL

  */s/ Jessica E. Whelan*
Jessica E. Whelan (Nev. Bar. No. 14781)
John S. Michela (Nev. Bar. No. 8189)
Sabrena K. Clinton (Nev. Bar. No. 6499)
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov
(702) 486-3420

*Counsel for Plaintiff*

4

**Order Granting Stipulation Modifying Briefing Schedule
on Plaintiff's Motion to Remand
Dist. Ct. Doc. 23 (filed February 19, 2026)**

ROBERT A. DOTSON
Nevada State Bar No. 5285
DANIEL T. HAYWARD
Nevada State Bar No. 5986
JUSTIN C. VANCE
Nevada State Bar No. 11306
DOTSON, HAYWARD & VANCE, PC
5355 Reno Corporate Drive, Ste 100
Reno, Nevada 89511
Tel:    (775) 501-9400
Email:  rdotson@dhvnv.com
dhayward@dhvnv.com
jvance@dhvnv.com

GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER
*(Pro Hac Vice to be submitted)*
 200 Park Avenue
New York, NY 10166
Tel:    (212) 351-4000
Email: OSnyder@gibsondunn.com

*Attorneys for Defendants BLOCKRATIZE
INC. d/b/a POLYMARKET; QCX LLC d/b/a
POLYMARKET US; ADVENTURE ONE QSS
INC. d/b/a POLYMARKET*

*Additional counsel listed on signature block*

JESSICA E. WHELAN
Nevada State Bar No. 14781
JOHN S. MICHELA
Nevada State Bar No. 8189
SABRENA K. CLINTON
Nevada State Bar No. 6499
STATE OF NEVADA
OFFICE OF THE ATTORNEY GENERAL
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
Tel:    (702) 486-3420
Email:  jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br>                              Plaintiff,<br>        v.<br>BLOCKRATIZE INC. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; ADVENTURE ONE QSS INC. d/b/a Polymarket,<br>                              Defendants. | CASE NO. 3:26-cv-00089-MMD-CLB<br><br>ORDER GRANTING STIPULATION MODIFYING BRIEFING SCHEDULE ON PLAINTIFF'S MOTION TO REMAND<br>(FIRST REQUEST) |

Pursuant to Local Rules IA 6-1, IA 6-2, and 7-1, Plaintiff and Defendants, through their respective counsel, submit the following Stipulation and Order Modifying Briefing Schedule on Plaintiff's Motion to Remand.  This is the first stipulation for a modification of the briefing schedule on Plaintiff's Motion to Remand.

1.    On January 29, 2026, the First Judicial District Court of the State of Nevada granted Plaintiff's Application for an *Ex Parte* Temporary Restraining Order.   The order enjoins Defendants from "operating or offering a market in Nevada that involves 'event-based contracts' without a valid license issued in accordance with Chapter 463 of Nevada Revised Statutes."  Dkt. 2-4, at 86.  The *ex parte* temporary restraining order expires on February 12, 2026.

2.    On February 5, 2026, Defendants removed this case to this Court pursuant 28 U.S.C. §§ 1331, 1441, 1442(a)(1), and 1446.

3.    On February 9, 2026, Plaintiff informed Defendants that it intended the same day to file an emergency motion to remand.

4.    On an ordinary briefing schedule, Defendants' Opposition to Plaintiff's Motion to Remand would be due February 23, 2026, with Plaintiff's Reply due March 2, 2026.

5.    Because Plaintiff wishes to have the motion resolved before the expiration of the *ex parte* temporary restraining order, Plaintiff proposed that Defendants have 24 hours to respond to Plaintiff's motion.

6.    Instead, to ensure that the parties have adequate time to brief—and the Court has adequate time to consider—Plaintiff's Motion to Remand, the parties have agreed that good cause exists for a more modest abbreviation to the ordinary briefing schedule.

7.    Under the agreed abbreviated briefing schedule, the parties stipulate to the following deadlines:

    a.   Plaintiff filed its motion to remand on February 9, 2026.

    b.   Defendants will file their Opposition to Plaintiff's Motion to Remand on or before February 13, 2026.

    c.   Plaintiff will file any Reply in Support of its Motion to Remand on or before February 18, 2026.

/ / /

/ / /

8.    The parties respectfully request that the Court hear argument on Plaintiff's Motion to Remand.  The parties are available on February 23 and February 24, 2026, but defer to the Court's availability and schedule.

9.    The parties also respectfully request that the Court resolve Plaintiff's Motion to Remand by February 26, 2026.

10.    Solely to allow the Court to resolve the motion on a reasonable schedule, Defendants have consented, pursuant to Fed. R. Civ. P. 65(b)(2), to a 14-day extension of the *ex parte* temporary restraining order through February 26, 2026.

11.    Defendants consent to this extension without prejudice to—and while expressly reserving—any defenses and objections, including those based on improper service and personal jurisdiction.  Plaintiff agrees not to rely on Defendants' consent to the extension or on this Stipulation as a basis for disputing the validity of Defendants' defenses and objections.

12.    Similarly, Plaintiff agrees to the terms of this stipulation without prejudice to—and while expressly reserving—any challenge to the jurisdiction of this Court over the civil enforcement action brought by Plaintiff in state district court.

13.    For all of the aforementioned reasons, the parties stipulate and request the Court issue an alternative briefing schedule for Plaintiff's Motion to Remand, as set forth herein.


IT IS SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

DATED: _____February 19, 2026_____

DOTSON, HAYWARD & VANCE, PC

_/s/ Robert A. Dotson_
ROBERT A. DOTSON (NSB No. 5285)
DANIEL T. HAYWARD (NSB No. 5986)
JUSTIN C. VANCE (NSB No. 11306)
5355 Reno Corporate Drive, Ste 100
Reno, Nevada 89511
(775) 501-94

Orin Snyder*
Matt Benjamin*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
212.351.4000
OSnyder@gibsondunn.com
MBenjamin@gibsondunn.com

Thomas H. Dupree Jr.*
Jacob T. Spencer*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
202.955.8500
TDupree@gibsondunn.com
JSpencer@gibsondunn.com

_Attorneys for Defendants BLOCKRATIZE_
_INC. d/b/a POLYMARKET; QCX LLC d/b/a_
_POLYMARKET US; ADVENTURE ONE QSS_
_INC. d/b/a POLYMARKET_
*_Pro hac vice_ forthcoming

OFFICE OF THE NEVADA ATTORNEY
GENERAL

_/s/  Jessica E. Whelan_
JESSICA E. WHELAN (NSB 14781)
 Chief Deputy Solicitor General
JOHN S. MICHELA (NSB 8189)
 Senior Deputy Attorney General
SABRENA K. CLINTON (NSB 6499)
 Senior Deputy Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov
(702) 486-3420

_Attorneys for Plaintiff_