**No. 26-1343**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,
*Plaintiff-Appellee,*

v.

BLOCKRATIZE INC. d/b/a POLYMARKET; QCX LLC d/b/a
POLYMARKET US; and ADVENTURE ONE QSS INC.
d/b/a POLYMARKET,
*Defendants-Appellants.*

On Appeal from the United States District Court for the
District of Nevada, No. 3:26-cv-00089 (Hon. Miranda M. Du)

**PLAINTIFF-APPELLEE'S OPPOSITION TO
EMERGENCY MOTION TO STAY ORDER PENDING APPEAL**

Aaron D. Ford
  Attorney General of Nevada
Jessica E. Whelan
  Chief Deputy Solicitor General—Litigation
Sabrena K. Clinton
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.............................................................................. 1

BACKGROUND ............................................................................... 2

    A.    Nevada's Regulation of Gaming ................................... 2

    B.    State Court Proceedings............................................... 3

    C.    Federal Court Proceedings .......................................... 5

LEGAL STANDARD ....................................................................... 7

ARGUMENT ................................................................................... 8

POLYMARKET IS NOT ENTITLED TO A STAY PENDING
APPEAL.......................................................................................... 8

    A.    Polymarket Has No Likelihood of Success on the Merits.......... 8

        1.    Polymarket has not shown that federal officer
            removal applies ................................................... 8

        2.    Polymarket has not established federal-question
            jurisdiction ....................................................... 14

    B.    The Remaining *Nken* Factors Weigh Heavily Against a
        Stay Pending Appeal ................................................. 19

        1.    Polymarket has not shown irreparable harm from
            litigating this case in state court pending appeal............. 19

        2.    The balance of equities and public interest do not
            favor a stay........................................................ 21

CONCLUSION .............................................................................24

i

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Acad. of Country Music v. Continental Cas. Co.*,
  991 F.3d 1059 (9th Cir. 2021) ................................................................. 20

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
  148 F.4th 648 (9th Cir. 2025) .................................................................. 22

*California ex rel. Harrison v. Express Scripts, Inc.*,
  139 F.4th 763 (9th Cir. 2025) ............................................................. *passim*

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ........................................................................... passim

*Chick Kam Choo v. Exxon Corp.*,
  486 U.S. 140 (1988) ........................................................................... passim

*Cunningham v. Cornell Univ.*,
  604 U.S. 693 (2025) ................................................................................. 16

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ................................................................... 23

*Edwards v. Emperor's Garden Rest.*,
  130 P.3d 1280 (Nev. 2006) ...................................................................... 16

*Fidelitad, Inc. v. Insitu, Inc.*,
  904 F.3d 1095 (9th Cir. 2018) ................................................................... 9

*Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982) ................................................................................. 16

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
  98 F.4th 1180 (9th Cir. 2024) .................................................................... 7

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers
  Vacation Tr. for S. Cal.*,
  463 U.S. 1 (1983) ............................................................................... passim

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
  865 F.3d 1237 (9th Cir. 2017) ............................................................. passim

/ / /

ii

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                         **Page(s)**

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
545 U.S. 308 (2005) ............................................................ 17

*Gunn v. Minton,*
568 U.S. 251 (2013) ............................................................ 15

*Haddad v. State,*
2011 WL 1225795 (Nev. Jan. 13, 2011) ............................ 17

*Houston v. Moore,*
18 U.S. (5 Wheat.) 1 (1820) ............................................... 16

*KalshiEX, LLC v. Hendrick,*
2025 WL 3286282 (D. Nev. Nov. 24, 2025) .............. passim

*Lu Junhong v. Boeing Co.,*
792 F.3d 805 (7th Cir. 2015) ............................................. 12

*Negrete v. City of Oakland,*
46 F.4th 811 (9th Cir. 2022) ............................................. 16

*Nevada v. Bank of Am. Corp.,*
672 F.3d 661 (9th Cir. 2012) ..................................... passim

*Newtok Vill. v. Patrick,*
21 F.4th 608 (9th Cir. 2021) ............................................. 15

*Nken v. Holder,*
556 U.S. 418 (2009) .............................................................. 7

*Riggs v. Airbus Helicopters, Inc.,*
939 F.3d 981 (9th Cir. 2019) ..................................... passim

*Royal Canin U.S.A., Inc. v. Wullschleger,*
604 U.S. 22 (2025) ..................................................... passim

*In re Ryze Claims Sols., LLC,*
968 F.3d 701 (7th Cir. 2020) ............................................. 23

/ / /

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                   **Page(s)**

*Saldana v. Glenhaven Healthcare LLC,*
  27 F.4th 679 (9th Cir. 2022) ............................................................ 10

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
  159 F.3d 1209 (9th Cir. 1998) .................................................... passim

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ........................................................................ 22

*United States v. Carey,*
  929 F.3d 1092 (9th Cir. 2019) ........................................................ 16

*Watson v. Philip Morris Cos.,*
  551 U.S. 142 (2007) .................................................................... passim

*Willingham v. Morgan,*
  395 U.S. 402 (1969) ........................................................................ 13

**Statutes**

28 U.S.C. § 1331 ...................................................................... passim

28 U.S.C. § 1442 .............................................................................. 5

28 U.S.C. § 1442(a)(1) ...................................................................... 8

28 U.S.C. § 1450 ............................................................................ 20

NRS § 30.030 .................................................................................. 3

NRS § 463.0129(1)(a) ...................................................................... 2

NRS § 463.140(1) ............................................................................ 3

NRS § 463.343 ................................................................................ 3

NRS § 463.346 ................................................................................ 3

NRS § 465.086 ........................................................................ passim

NRS § 465.086(1) .......................................................................... 16

iv

## INTRODUCTION

This is a state enforcement action brought by the Nevada Gaming Control Board (Board) against Defendants (collectively Polymarket). Polymarket offers sports betting in Nevada in violation of state law. The Board filed this case in state court to obtain a court order requiring Polymarket to comply with state law. Polymarket removed the case to federal court. The district court found that Polymarket had no valid basis for removal and remanded the case. Polymarket now seeks a stay pending appeal.

The Court should deny Polymarket's motion because, as the district court held, Polymarket is not likely to succeed on the merits of its arguments that this case must be heard in federal court. Polymarket is not acting under the direction of a federal officer simply because it is regulated by the federal Commodity Futures Trading Commission (CFTC). And this case does not arise under federal law: The Board's complaint asserts only state-law claims, and Polymarket's federal preemption defense does not create federal-question jurisdiction.

Separately, no stay is warranted because Polymarket cannot demonstrate irreparable injury. As this Court already has held, a party is not irreparably injured by having to litigate in state court as opposed to federal court. State courts are perfectly competent to address federal defenses, and a State has a special sovereign interest in having its enforcement actions heard in its own courts.

Finally, the balance of equities plainly favors the Board. As both the district court and the state court found, granting Polymarket a stay to continue its illegal gaming operations would cause serious and irreparable injury to the State, its gaming industry, and the public.

Polymarket makes various arguments about the ultimate merits, contending that the Commodity Exchange Act (CEA) preempts state regulation. But this appeal is not about the merits; it is only about whether this case must proceed in federal court instead of in state court. On that issue, the district court correctly concluded that Polymarket has no valid basis for removal and no right to a stay. This Court should deny the stay motion.

## BACKGROUND

### A. Nevada's Regulation of Gaming

Nevada's gaming industry is "vitally important to the economy of the State and the general welfare of the inhabitants." NRS § 463.0129(1)(a). Nevada law comprehensively regulates entities that conduct gaming activities. Every entity conducting gaming is subject to a rigorous licensing process, *id.* § 463.160(1), must pay taxes on gross gaming revenue, *id.* § 463.373, and must comply with many other requirements—including prohibitions on wagers from those under 21, *id.* § 463.350(1)(a), and safeguards to ensure wagers are not placed by owners, coaches, players, or officials participating in an event, *see* Nev. Gam'g Comm. Reg. 22.1205(2).

2

The Board is statutorily charged with administering and enforcing Nevada gaming law. NRS § 463.140(1). To stop the unlawful operation of a gaming entity in Nevada, the Board is authorized to bring a civil action in state court in Carson City, Nevada, or the place where the company does business. *Id.* § 463.343.

## B.    State Court Proceedings

Polymarket offers sports, election, and other event betting in Nevada. *See* 3App300, 3App303 (¶¶ 2, 20). For example, as of January 16, 2026, a user could buy an event contract for $0.36 that would pay out $1 if the Chicago Bears won their January 18, 2026, NFL playoff game against the Los Angeles Rams. 3App303 (¶ 21). Polymarket is not licensed in Nevada and does not comply with Nevada gaming law. 3App304 (¶ 25).

On January 16, 2026, the Board initiated enforcement proceedings against Polymarket by filing a complaint in state court, as NRS § 463.343 requires. *See* 3App299. The complaint alleges that Polymarket is unlawfully offering sports and other event betting in Nevada. 3App305-307 (¶¶ 36-59). The complaint asserts two claims for declaratory and injunctive relief: one under NRS §§ 463.343 and 463.346, and the second under NRS § 30.030. 3App307-309 (¶¶ 60-80). The Board moved for a temporary restraining order (TRO) and preliminary injunction, explaining that Polymarket's unlicensed operations cause severe and irreparable harm

every day to the State, its gaming industry, and the public.  3App320-325.

Polymarket filed a preliminary response. *See* 3App335-342.  Polymarket did not dispute that it is offering unlicensed gaming in Nevada but contended that it does not need to comply with state law because, in its view,  the CEA "preempts the application of state gambling laws to" its market.  3App339-340.

On January 29, 2026, the state court granted the Board a TRO, enjoining Polymarket from "operating or offering a market in Nevada that involves 'events-based contracts' without a valid license."  3App381, 3App384-385.  The state court found that Polymarket's activities likely violate Nevada's gaming laws and rejected Polymarket's preemption defense, agreeing with the federal district court's prior holding on that issue.  3App377-379 (citing *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282 (D. Nev. Nov. 24, 2025)).

The state court also found that Polymarket's unlicensed operations cause immediate and irreparable injury.  For example, the court explained, Polymarket allows people under age 21 to gamble and does not follow the requirements in Nevada law that prevent insiders from betting on their own events.  3App379.  Those harms "cannot be mitigated" once incurred.  *Id*.  The court determined that each day Polymarket keeps operating in violation of Nevada law causes additional harm: "A day means

4

more consumers. More consumers mean more transactions. More transactions means more potential harm." 3App379-380.

The court set the TRO to expire on February 12, 2026, and scheduled a preliminary-injunction hearing on February 11. 3App381, 3App385. The parties later stipulated to extend the TRO through April 6, 2026. 1App11, 1App33.

### C. Federal Court Proceedings

The day Polymarket's preliminary-injunction brief was due in state court, Polymarket removed the case to federal court. *See* 3App273. Polymarket asserted two grounds for removal: jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442, and federal-question jurisdiction under 28 U.S.C. § 1331. 3App279-88 (¶¶ 24-60).

The district court rejected both of Polymarket's asserted grounds for removal and remanded the case. 1App24.

The court first held that Polymarket had not shown that it was acting under the direction of a federal officer at the CFTC with respect to the "functions relevant to the Board's claims"—self-certifying that its contracts comply with the CEA and offering them for trading on its market. 1App18-20. The court explained that Polymarket's actions merely demonstrate its own compliance with federal law, which is not sufficient to show that it is acting under a federal officer. 1App19-20 (citing *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981 (9th Cir. 2019)).

The district court next held that Polymarket had not established federal-question jurisdiction. 1App20-23. The court explained that the Board's complaint asserts only state-law causes of action, which "require no interpretation of federal law." 1App21-22. At bottom, the court explained, Polymarket merely is asserting a federal preemption defense, which "is not sufficient to give rise to federal question jurisdiction." 1App23 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Polymarket filed a notice of appeal, *see* 3App417, and moved for a stay of the remand order, *see* 2App71. The district court recalled its remand order for the limited purpose of deciding the stay motion. 3App434 (Dkt. 48).

The district court denied Polymarket's stay motion. 1App3. The court held that Polymarket had not shown a likelihood of success on the merits of its appeal, explaining that Polymarket merely "repeat[ed] the same arguments the [c]ourt previously rejected," without addressing the court's reasoning in its opinion. 1App5.

The district court then held that the balance of equities favors the Board. 1App5-6. The court explained that Polymarket will not suffer an irreparable harm without a stay, because "litigating in state court is not a harm, let alone an irreparable harm." 1App5-6 (citing *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 770-71 (9th Cir. 2025), *cert. denied*, 2026 WL 79931 (U.S. Jan. 12, 2026)). The court also found

that entering a stay would harm the Board and would be contrary to the public interest. 1App6 (citing *Hendrick*, 2025 WL 3286282).

Polymarket filed the instant stay motion. ECF 5.1.

## LEGAL STANDARD

This Court recently addressed the standard for a stay of a remand order pending appeal in *Express Scripts*. The Court held that a case should not automatically be stayed pending an appeal of a district court's order remanding the case to state court; rather, the court should evaluate whether a stay is warranted using the factors set out in *Nken v. Holder*, 556 U.S. 418 (2009). 139 F.4th at 768-71.

As the Supreme Court explained in *Nken*, a stay is "an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right." 556 U.S. at 427 (internal quotation marks and citation omitted). To obtain a stay pending appeal, Polymarket must show that (1) it is likely to succeed on the merits of its appeal; (2) it will suffer irreparable harm absent a stay; (3) the balance of equities weighs in its favor; and (4) a stay serves the public interest. *Id.* at 434. At a minimum, Polymarket must show that it raised "serious questions" on the merits and that the balance of hardships "tips sharply" in its favor. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotation marks omitted). / / /

## ARGUMENT

## POLYMARKET IS NOT ENTITLED TO A STAY PENDING APPEAL

None of the *Nken* factors is met here. Polymarket has not identified any error in the court's decision or serious question on the merits. Further, on the balance of harms, this Court already has held that a party is not irreparably harmed by having to litigate its case in state court pending the resolution of its federal appeal. And as the district court explained, the Board's strong interests and the public interest weigh heavily against a stay.

### A. Polymarket Has No Likelihood of Success on the Merits

Polymarket has not shown a likelihood of success—or even a serious question—on the merits of its appeal. Indeed, both of Polymarket's arguments are foreclosed by binding precedent.

#### 1. Polymarket has not shown that federal officer removal applies

Polymarket first argues (Mot. 11-19) that the district court has jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That is incorrect.

The federal officer removal statute allows a "person" to remove a "civil action . . . that is commenced in a State court and that is against" an "officer (or any person acting under that officer) of the United States or of any agency thereof" and is sued "in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C.

8

§ 1442(a)(1). Although this statute is "liberally construed," it "is not limitless." *Express Scripts*, 154 F.4th at 1078 (internal quotation marks and citation omitted).

To show that removal is appropriate under this statute, a removing defendant must (1) demonstrate that it is a federal officer or person "acting under" a federal officer, (2) demonstrate that the plaintiff's claims are "for, or relating to" an act under color of federal office, and (3) raise a colorable federal defense. *See Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). Here, Polymarket fails to establish the first element—it is not a person "acting under" a federal officer. It also cannot establish the second element—the Board's claims do not relate to any actions taken at the direction of a federal officer, because no such action exists.

"Acting under" a federal officer means acting at the direction of a federal officer to carry out federal law. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007). As the Supreme Court has held, and as the district court recognized (1App17), a person is not "acting under" a federal officer merely because the person is regulated by a federal agency. In *Watson*, for example, the Supreme Court held that a tobacco company could not avail itself of the federal officer removal statute based on "the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Id*. at 145. To be "acting under" a federal officer, a private person must be involved in "an effort to

9

*assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 151-52. In doing so, the defendant must have an "unusually close" relationship with a federal officer that is "distinct from the usual regulator/regulated relationship." *Id.* at 153, 157. Anything less, the Supreme Court warned, would impermissibly "expand the scope of th[is] [removal] statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.* at 153.

Following that guidance, this Court has recognized that federal officer removal requires more than "mere compliance with a regulation," even if that regulation "'is highly detailed'" and even if the private entity's activities "'are highly supervised and monitored.'" *Riggs*, 939 F.3d at 985 (quoting *Watson*, 551 U.S. at 153). When all the defendant alleges is that it complies with federal "government regulations and recommendations," the defendant "has failed to establish that it was 'acting under' a federal official, and it has not identified a duty of the federal government that it performed." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685 (9th Cir. 2022).

That is true, this Court has held, even when the party is acting pursuant to "formally delegated legal authority" from a federal agency. *Riggs*, 939 F.3d at 985. In *Riggs*, for example, a helicopter manufacturer argued that it was "acting under" the Federal Aviation Administration because the agency delegated to the manufacturer the authority to certify

10

that helicopter designs complied with federal requirements. *Id.* This Court held that the manufacturer was not acting under the FAA, because the manufacturer was only following "a detailed, FAA-approved procedures manual." *Id.* at 988-89 (internal quotation marks and emphasis omitted).

The district court correctly applied that binding precedent in this case. Polymarket argues (Mot. 14) that because it is regulated by a federal agency, and the federal agency allows it to self-certify its event contracts, Polymarket actually is acting on behalf of the federal agency when it conducts its own business operations. But as the district court explained (1App19), all of Polymarket's claimed activities relevant to the Board's enforcement action are simply complying with the law, which is not enough to bring a private party within the scope of the federal officer removal statute. *Watson*, 551 U.S. at 145-53; *Riggs*, 939 F.3d at 985.

In particular, the Board's claims focus on Polymarket's actions self-certifying its own contracts and offering those contracts for trading. 1App18. The Ninth Circuit has held that the "delegation of authority 'to self-certify compliance with the relevant regulations'" is insufficient to show that the person is acting under the direction of a federal officer. *Riggs*, 939 F.3d at 988 (internal quotation marks omitted). Polymarket's self-certifying its contracts and offering them for trading similarly does not establish that it is "acting under" a federal officer, because that again is just Polymarket's own compliance with the law. 1App19-20.

11

Polymarket argues (Mot. 15) that this case is different from *Riggs* because *"Riggs* did not involve delegated rulemaking authority." That is incorrect. This case is about Polymarket self-certifying *its own* contracts and offering those contracts for trading. *See* 3App302-303 (¶¶ 18-24). It is not about Polymarket setting rules for third parties that access its markets. As the Court explained in *Riggs*, the "power to certify compliance" with federal law is not the same as the "power to design the rules" that could give rise to federal-officer jurisdiction. 939 F.3d at 988 (quoting *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 810 (7th Cir. 2015)). Thus, as in *Riggs*, Polymarket has demonstrated nothing more than "mere compliance with a regulation." *Id.* at 985; *accord* 1App19-20.

Polymarket cites (Mot. 13-14) *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016), for the proposition that some self-regulatory organizations "exercis[e] quasi-governmental powers." But *Sparta Surgical* is about governmental immunity, not removal, and the facts are completely distinguishable. There, the National Association of Securities Dealers (NASD), which operates the NASDAQ stock exchange and has the power to regulate trading on that exchange, delisted the plaintiff company's stock from the NASDAQ SmallCap market on the grounds that the listing violated the market's rules. 159 F.3d at 1211. The plaintiff brought state and federal claims against NASD, and NASD claimed government

12

immunity on the ground that it was "exercising quasi-governmental pow-ers." *Id.* at 1213. This Court explained that NASD was entitled to gov-ernmental immunity on the plaintiff's non-federal claims because NASD was "acting in an adjudicatory, prosecutorial, arbitrative or regulatory capacity" with respect to the plaintiff's stock. *Id.* at 1214-15. The key point was that NASD was regulating *third parties* on behalf of the gov-ernment. As the Court explained, NASD would not have been entitled to immunity if the case involved only NASD's "private business." *Id* at 1214.[1]

As the district court explained, this case involves only Polymarket's private business and does not involve "Polymarket's delegated authority to regulate third party contracts." 1App19-20 & n.5. Notably, Poly-market has not identified any decision holding that a self-regulatory or-ganization can remove a state enforcement action to federal court in these circumstances. Indeed, under Polymarket's theory, every regulated party would be able to remove any case alleging its conduct violates state law to federal court—a dramatic expansion of federal jurisdiction that would be directly contrary to the Supreme Court's guidance in *Watson*.

---

[1]    Polymarket also cites (Mot. 14) *Willingham v. Morgan*, 395 U.S. 402 (1969). But that decision simply recognizes that one of the purposes of federal officer removal is "to provide a federal forum for cases where federal officials must raise defenses arising from their official du-ties." *Id.* at 405. Polymarket is not a federal officer undertaking official duties, so *Willingham* is of no help to it.

Polymarket also relies (Mot. 13-14) on *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017). But this case is nothing like *Goncalves*. There, this Court held that a private insurer acted under a federal officer in bringing claims against third parties to pursue subrogation on behalf of the Office of Personnel Management. 865 F.3d at 1246-47. Here, Polymarket is a private company listing event contracts to make money for itself; it is not taking action on behalf of the federal government to obtain funds for the federal government.

Polymarket's federal officer removal arguments fail under this Court's binding precedent. It therefore has not presented any "serious questions" for appeal on this asserted ground of removal.

### 2. Polymarket has not established federal-question jurisdiction

Polymarket next argues (Mot. 19-21) that it has established federal-question jurisdiction because this case arises under federal law. That also is incorrect. The Board filed this action in Nevada state court, seeking to enforce state gaming law and asserting only state-law causes of action. 3App307-309 (¶¶ 60-80). There is no federal claim on the face of the well-pleaded complaint. If Polymarket believes federal law supplies a defense to those claims, it is free to raise that defense in state court. It may not transform a state-law enforcement action into a federal case through removal. *See* 1App20-23.

14

Under 28 U.S.C. § 1331, federal courts have jurisdiction to decide cases "arising under" federal law. 28 U.S.C. § 1331; *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). "Arising under" jurisdiction is carefully circumscribed: A case "arises under . . . federal law" only if either (1) federal law creates the cause of action, or (2) a "substantial question of federal law is a necessary element of a plaintiff's well-pleaded complaint." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) (citation omitted).

Polymarket relies only on the second category. It argues that this is one of the "rare" class of cases in which a complaint asserting only state-law claims nonetheless "necessarily raise[s]" a "substantial" and "actually disputed" federal issue—that is, where it is not legally possible for the plaintiff to prevail without addressing federal law. *Royal Canin*, 604 U.S. at 26; *see Gunn v. Minton*, 568 U.S. 251, 258 (2013) (referring to the second category as a "special and small category" of cases).

Polymarket's fundamental argument (Mot. 19) is that a court cannot decide whether Polymarket is violating Nevada law without also deciding whether state law is preempted by the federal CEA. That is incorrect. Whether Polymarket's unlicensed operations violate Nevada law depends on what contracts it is offering, whether those contracts are gaming activities regulated by state law, and whether Polymarket is licensed, pays Nevada taxes, and otherwise complies with Nevada gaming law. *See* 3App304-307 (¶¶ 25-59). Polymarket's argument is a federal

15

preemption defense, and it is well established that a preemption defense is not a basis for removal. *See Caterpillar*, 482 U.S. at 393 (Cases "may not be removed to federal court on the basis of . . . the defense of preemption."); *Negrete v. City of Oakland*, 46 F.4th 811, 817 (9th Cir. 2022) (same).

Polymarket argues (Mot. 19) that this case arises under federal law because NRS § 465.086—one of the state statutes that the Board cites in its complaint—requires entities offering gaming in Nevada to obtain a Nevada gaming license except as "otherwise provided by law." *See* NRS § 465.086(1) (rendering it "unlawful for a person to receive" proceeds from accepting a bet "[e]xcept as otherwise provided by law"). But as the district court explained, that reference to "law" refers to Nevada law, not federal law. 1App22; *see Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 42 (1820) (Johnson, J., concurring) (when a statute refers to "law" generally, the statute is presumed to refer "only . . . to the laws of the government" that enacted the statute).[2] And even if the "[e]xcept as otherwise provided" language incorporated federal law, that would establish an affirmative defense, not an element of the statutory claim that could serve as a basis for removal. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 701

---

[2] Polymarket relies (Mot. 20) on *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280 (Nev. 2006), but as the district court explained, that decision involved federal, not state, law. 1App22 n.6. Polymarket also cites (Mot. 20-21) *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982), but that case was about interpreting a federal regulation, not about interpreting a reference to "law" in a Nevada statute as a matter of Nevada law.

16

(2025); *United States v. Carey*, 929 F.3d 1092, 1100 (9th Cir. 2019); *Haddad v. State*, 2011 WL 1225795, at \*2 (Nev. Jan. 13, 2011).

Polymarket also notes (Mot. 19-20) that NRS § 465.086 prohibits a company from accepting wagers without having procured "all federal, state, county and municipal gaming licenses as required by statute." Polymarket argues (Mot. 19) that because it possesses a federal "license" (*i.e.*, its registration with the CFTC), it does not need to possess a state license. The district court correctly rejected this argument. 1App22-23. The requirements in the statute are cumulative; possessing one license does not excuse the absence of another. If Polymarket lacks a Nevada gaming license (which it does not dispute), then it violates Section 465.086 even if it has a federal license.

Nevada law does not require the Board to show noncompliance with the CEA in order to establish a violation of NRS § 465.086. As the district court explained, the Board's "claims strictly relate to Polymarket's failure to obtain the requisite Nevada licenses." 1App22. That distinguishes this case from *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (cited at Mot. 19), where the plaintiff expressly incorporated federal law into the cause of action; the state law in that case required the plaintiff to specify "the facts establishing the superiority of [its] claim," and the plaintiff had premised superiority "on a failure by the IRS to give it adequate notice, as defined by federal law." *Id*. at 314–15

17

Polymarket's expansive position would mean that anytime a defendant raises a federal defense, there is "arising under" jurisdiction. It should be rejected for that reason. And if there were any doubt, principles of federalism would counsel in favor of remand. The Court should be "reluctant to snatch" a case that "a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983). No such rule does. The Board brought this action "in state court to enforce its own state . . . laws," alleging only "state law causes of action, brought to protect Nevada residents." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012). Under these circumstances, "the claim of sovereign protection from removal arises in its most powerful form." *Id.* (citation omitted). Nevada courts should adjudicate this matter, even if doing so requires them to contend with issues of federal law. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150 (1988). After all, the Supreme Court has long recognized that "state courts . . . are presumed competent to resolve federal issues." *Id.*

Polymarket's assertion of federal-question jurisdiction thus is contrary to binding precedent from this Court and the Supreme Court. Polymarket is not likely to succeed on the merits and has not raised any serious legal issue.

18

### B. The Remaining *Nken* Factors Weigh Heavily Against a Stay Pending Appeal

Separately, Polymarket has not shown irreparable harm, and its purported harms are dwarfed by the harms to the State and the public.

### 1. Polymarket has not shown irreparable harm from litigating this case in state court pending appeal

The issue here is whether this enforcement action should proceed in federal or state court. As the district court explained, "litigating in state court is not a harm, let alone an irreparable harm." 1App5. This Court made exactly that point in *Express Scripts*, when it held that a court should *not* automatically stay a remand order pending appeal. *See* 139 F.4th at 767. The Court explained that state and federal courts both provide "forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanisms." *Id.* at 770. The Court suggested that, if anything, the district court should err on the side of denying the stay and allowing the case to proceed in state court. *Id.*

Thus, in *Express Scripts*, this Court rejected the same arguments that Polymarket now makes about how it will supposedly be harmed absent a stay. Further, both this Court and the Supreme Court have recognized that States have a strong sovereign interest in having state-law enforcement actions heard in their own courts; in those circumstances, the "balance of federal and state judicial responsibilities" favors state adjudication. *Bank of Am.*, 672 F.3d at 675 (9th Cir. 2012) (internal quotation marks omitted); *see Franchise Tax Bd.*, 463 U.S. at 21 n.22.

Polymarket contends (Mot. 21-23) that proceeding in state court would make its appeal in this case "[m]eaningless." Again, the Court rejected that argument in *Express Scripts*, when it explained that continuing litigation in state court during the pendency of an appeal from a remand order is the norm, not the exception. 139 F.4th at 768-70. If the Court ultimately decides this case belongs in federal court, the district court can recall its remand order post-appeal. *See Acad. of Country Music v. Continental Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021). And the district court may "dissolve[] or modif[y]" the state court's "injunctions, orders, and other proceedings." 28 U.S.C. § 1450. There thus is no irreparable harm in allowing this case to proceed in state court.

More generally, Polymarket is wrong to assert (Mot. 22-23) that it is entitled to press its federal defense in a federal forum. State courts have the power and the duty to decide federal claims, and they are perfectly competent to do so. *Chick Kam Choo*, 486 U.S. at 150. And the state courts have a particularly strong interest in adjudicating violations of state law. *Bank of Am.*, 672 F.3d at 675.

Finally, Polymarket is wrong to say (Mot. 2, 11, 22-23) that allowing this state enforcement action to proceed in state court will "paralyze the operations of the [federal] government." That argument is a red herring, and it is wrong. Polymarket's ultimate argument is that only the CFTC can regulate it, so there should be no state regulation at all of its contracts. *See* 3App340. That is an argument about the merits of its

20

preemption defense—not an argument about whether this case belongs in state or federal court. Put another way, Polymarket's complaint is not about having to litigate in state court; its complaint is about having to be subject to a state enforcement action *anywhere.* So that argument simply is not relevant to the question here, which is whether this case must be heard in federal court as opposed to state court. Anyway, Polymarket's merits argument is wrong. All of the federal and state courts in Nevada that have considered the issue have agreed: States have the power to regulate gambling, not the federal government. *See Hendrick*, 2025 WL 3286282, at \*8; 3App378; Order at 5, *Nevada v. Coinbase Fin. Mkts., Inc.*, No. 26-OC-00030-1B (Nev. 1st Jud. Dist. Feb. 5, 2026).

Thus, Polymarket is not irreparably harmed by having to litigate its federal preemption defense in state court, as opposed to federal court.

### 2. The balance of equities and public interest do not favor a stay

As the district court found, the balance of equities and the public interest strongly favor denial of Polymarket's stay motion. 1App5-6.

To start, a State "suffers a form of irreparable injury" "[a]ny time" it is "enjoined by a court from effectuating statutes enacted by representatives of its people." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025)). The Board has a statutory obligation to "consistently and equitably" enforce Nevada gaming law to "protect the health, safety,

21

morals, good order, and general welfare of gaming consumers." 3App379; *see Hendrick*, 2025 WL 3286282, at *13. Preventing the Board from doing so affronts Nevada's sovereignty and intrudes on the democratic will of the people.

Further, the Board suffers immediate and irreparable harm whenever Polymarket allows persons in Nevada to wager in violation of Nevada law. 3App379-80. As the state court explained, "every day" matters "in a literal sense" in these cases: "A day means more consumers. More consumers mean more transactions. More transactions mean more potential harm." 3App380. The federal district court agreed: Every day a prediction market violates Nevada law imposes "substantial irreparable harms to the Board, the State of Nevada, the gaming industry in this state, and the public interest," *Hendrick*, 2025 WL 3286282, at *13-14; *see* 1App6—harms that far outweigh Polymarket's asserted harms. Polymarket's continued operation deprives Nevada of needed revenue, gives Polymarket an unfair advantage over licensed competitors, and harms the public. *See Hendrick*, 2025 WL 3286282, at *13-14.

Polymarket's attempts to minimize those harms lack merit. It suggests the public interest instead lies with litigating this case "in one court," Mot. 23 (citation omitted), but this Court has recognized that the public has an interest in state enforcement actions being litigated in state courts. *Bank of Am.*, 672 F.3d at 675. Further, as the state court explained, the public interest favors stopping Polymarket's illegal gambling

22

operations. *See* 3App380. Polymarket cites several inapposite out-of-circuit decisions that suggest there can be inefficiencies from litigating related claims in different courts; those decisions concern severing claims, not staying remand orders. *See In re Ryze Claims Sols., LLC*, 968 F.3d 701, 712 (7th Cir. 2020); *Def. Distributed v. Bruck*, 30 F.4th 414, 428 (5th Cir. 2022).

Finally, Polymarket contends (Mot. 25) that the Board's purported delay in other litigation involving a different prediction market (Kalshi) undermines the Board's claims of irreparable harm. But this is a case about Polymarket, and the Board filed this enforcement action in state court as soon as it became aware of Polymarket's unlicensed operations in Nevada. More generally, the Board has actively complied with its statutory mandate to consistently and equitably enforce Nevada's gaming laws, moving expeditiously to bring enforcement actions against all known prediction markets operating in the State. The harm is real and irreparable, and it should not be allowed to continue.

/ / /

/ / /

/ / /

23

## CONCLUSION

The Court should deny Polymarket's motion.

Dated:  March 23, 2026          Respectfully submitted,
                                 /s/ *Jessica E. Whelan*

Aaron D. Ford
  Attorney General of Nevada
Jessica E. Whelan
  Chief Deputy Solicitor General—Litigation
Sabrena K. Clinton
  Senior Deputy Attorney General
State of Nevada,
  Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420

24

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this motion:

(i)    complies with the type-volume limitation of Rule 27(d)(2) because it contains 5,459 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word for Microsoft 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated:  March 23, 2026

/s/ *Jessica E. Whelan*
Jessica E. Whelan (Bar No. 14781)

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 23, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 23, 2026         /s/ *J. Beesley*
                                         J. Beesley, an employee of the Office of the Nevada Attorney General