No. 26-1343

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

State of Nevada *ex rel.* Nevada Gaming Control Board,

*Plaintiff-Appellee,*

*v.*

Blockratize Inc. d/b/a Polymarket; QCX LLC d/b/a Polymarket US;
Adventure One QSS Inc. d/b/a Polymarket,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Nevada
(Hon. Miranda Du)
No. 3:26-cv-00089

# REPLY IN SUPPORT OF EMERGENCY MOTION
# TO STAY ORDER PENDING APPEAL

Mark A. Hutchison
Joseph C. Reynolds
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: 775.853.8746
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com

Adam P. Laxalt
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
Telephone: 202.220.9600
alaxalt@cooperkirk.com

Thomas H. Dupree Jr.
Jacob T. Spencer
Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
Telephone: 202.955.8500
tdupree@gibsondunn.com
jspencer@gibsondunn.com
asteene@gibsondunn.com

Orin Snyder
Matthew Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com

*Attorneys for Defendants-Appellants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 3

I.      This Court Is Likely To Reverse The District Court's Remand Order. ........... 3

      A.      The Federal Officer Removal Statute Applies ..................................... 3

      B.      The District Court Has Federal Question Jurisdiction ........................ 7

II.     Defendants Will Suffer Irreparable Harm Without A Stay. ............................ 8

III.    The Balance Of Equities And Public Interest Favor A Stay. ........................ 11

CONCLUSION ......................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barry v. Cboe Glob. Markets, Inc.*,
 42 F.4th 619 (7th Cir. 2022) ....................................................................5

*BP P.L.C. v. Mayor of Baltimore*,
 593 U.S. 230 (2021).................................................................2, 8, 11, 12

*Ceballos v. NP Palace, LLC*,
 514 P.3d 1074 (Nev. 2022) ......................................................................7

*Cunningham v. Cornell Univ.*,
 604 U.S. 693 (2025) ..................................................................................8

*Durham v. Lockheed Martin Corp.*,
 445 F.3d 1247 (9th Cir. 2006) ..................................................................9

*FCC v. Consumers' Rsch.*,
 606 U.S. 656 (2025)..................................................................................4

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
 458 U.S. 141 (1982)..................................................................................7

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
 15 F.4th 70 (1st Cir. 2021)........................................................................9

*Garcia v. Google, Inc.*,
 786 F.3d 733 (9th Cir. 2015) ..................................................................12

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
 865 F.3d 1237 (9th Cir. 2017) ..............................................................4, 5

*Gunn v. Minton*,
 568 U.S. 251 (2013)..................................................................................7

*Haddad v. State*,
 2011 WL 1225795 (Nev. Jan. 13, 2011)...................................................8

*California ex rel. Harrison v. Express Scripts, Inc.*,
 139 F.4th 763 (9th Cir. 2025) ..............................................2, 6, 8, 9, 10, 11

*Houston v. Moore*,
 18 U.S. (5 Wheat.) 1 (1820).....................................................................7

*Jefferson Cnty. v. Acker*,
 527 U.S. 423 (1999)..................................................................................6

*Leite v. Crane*,
 749 F.3d 1117 (9th Cir. 2014) ..................................................................6

*Liner v. Jafco, Inc.*,
  375 U.S. 301 (1964)............................................................................12

*Riggs v. Airbus Helicopters, Inc.*,
  939 F.3d 981 (9th Cir. 2019) ...............................................................4

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  159 F.3d 1209 (9th Cir. 1998) .............................................................5

*Tennessee v. Davis*,
  100 U.S. 257 (1879)...........................................................................10

*United States v. Carey*,
  929 F.3d 1092 (9th Cir. 2019) .............................................................8

*United States v. Vuitch*,
  402 U.S. 62 (1971)...............................................................................8

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007)...............................................................3, 5, 11, 12

*Willingham v. Morgan*,
  395 U.S. 402 (1969).............................................................................6

**STATUTES**

7 U.S.C. § 5(b)..................................................................................3, 9

7 U.S.C. §7(d) ......................................................................................3

7 U.S.C. §7a-2(c)(1) .............................................................................3

28 U.S.C. § 1331...................................................................................7

28 U.S.C. § 1442.............................................................1, 2, 3, 6, 9, 11, 12

Nev. Rev. Stat. § 465.086(1)...............................................................1, 7

## INTRODUCTION

Plaintiff's opposition does not defend the district court's reasoning, ignores Defendants' key arguments, and seeks to replace *Nken*'s discretionary standard with a categorical rule. This Court should stay the remand order pending appeal.

*Likelihood of success.* Courts have consistently held that private entities exercising federally delegated authority may invoke the federal officer removal statute. 28 U.S.C. § 1442. Because Polymarket US undisputedly exercises that kind of authority, it was entitled to remove the case. The district court's theory for remanding—the notion that federal *supervision* defeats removal—is indefensible, and Plaintiff makes no effort to defend it. This conceded error alone makes reversal likely.

This Court is also likely to reverse on federal question jurisdiction because Plaintiff must prove that Polymarket US's federally authorized operations were not authorized by "law," Nev. Rev. Stat. § 465.086(1)—a term the U.S. and Nevada Supreme Courts have interpreted to refer to both federal and state law. The district court did not explain why it felt free to disregard those interpretations. And the concurrence Plaintiff unearthed from 1820 is no more convincing today than it was when the district court declined to cite it.

*Irreparable harm.* Congress has determined that those who remove under the federal officer removal statute are entitled to have their federal defenses decided in

federal court. That right would be rendered meaningless if, pending appeal, Plaintiff is permitted to turn its *ex parte* shutdown order into a preliminary injunction. Plaintiff cannot explain how Polymarket US could have a meaningful appeal absent a stay. Instead, it questions the wisdom of Congress' decision to permit appeals for § 1442 removals. And Plaintiff reimagines this Court's directive to apply "the *Nken* factors" in remand appeals as a categorical *bar* on stays in such cases. *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 772 (9th Cir. 2025). That gets the law exactly backwards.

*Public interest and balance of harms.* Judicial economy would be better served by staying the case, not by forcing the parties to litigate merits issues once in state court and again on return to federal district court. Plaintiff does not dispute this point, instead previewing arguments—irrelevant at this stage—it plans to make in a preliminary-injunction motion. Read charitably, Plaintiff complains a stay will delay proceedings. "Congress," however, has "accepted the delay" that "appellate review . . . can entail" in these kinds of cases. *BP P.L.C. v. Mayor of Baltimore*, 593 U.S. 230, 245 (2021). Plaintiff may not second-guess this policy, particularly given its still-unexplained history of delayed enforcement.

This Court should stay the remand order. Because the administrative stay expires on Monday, April 6, Defendants respectfully request a ruling (or extension of the administrative stay) by Friday, April 3.

- 2 -

## ARGUMENT

**I.  This Court Is Likely To Reverse The District Court's Remand Order.**

**A.    The Federal Officer Removal Statute Applies.**

This Court is likely to conclude that Polymarket US "act[s] under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1).  "[U]nder the oversight of the" Commodity Futures Trading Commission (CFTC), 7 U.S.C. § 5(b), Polymarket US exercises federally delegated authority, including by "establish[ing] and enforc[ing] rules" regarding consumer "access" to its nationwide market, and by self-certifying new contracts for trading, *id.* §§ 7(d), 7a-2(c)(1); *see* Mot. 13.  Because it is well settled that the exercise of "delegat[ed] legal authority" establishes an acting-under relationship, the district court's contrary ruling is unlikely to survive appellate review. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 156 (2007); *see* Mot. 12-13.

In response, Plaintiff walks away from the reasoning central to the district court's decision.  The district court reasoned that "the CFTC's ultimate oversight and control over Polymarket"—including "the ability to override Polymarket's decisions"—meant that Polymarket US did not "act under" the CFTC.  1App19.  Plaintiff insists that the district court was referring only to "Polymarket's actions self-certifying its own contracts and offering those contracts for trading."  Opp. 11.  The *district court*, however, said that the "same reasoning applie[d] as to Polymarket's" promulgation and enforcement of market "'access requirements.'"

- 3 -

1App19.

As a result, Plaintiff has nothing to say about the opinion's flaws regarding market-access rulemaking. Plaintiff does not dispute, for example, that this Court has held "subjection, guidance, or control" to be *indicative* of—not fatal to—an acting-under relationship, Mot. 16 (quoting *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017)); that the Constitution *requires* agencies to "retain[] decision-making power" over private entities exercising delegated rulemaking authority, *id.* (quoting *FCC v. Consumers' Rsch.*, 606 U.S. 656, 692 (2025)); or that, for these reasons, the district court's key case, *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 989 (9th Cir. 2019)—a decision about non-discretionary self-certification—cannot be extended to delegated rulemaking authority without "destroy[ing] the federal officer removal statute" and upending precedent, *see* Mot. 15. In fact, Plaintiff *agrees* that, under *Riggs*, "the 'power to design the rules' . . . could give rise to federal-officer jurisdiction." Opp. 12 (quoting *Riggs*, 939 F.3d at 988).[1]

This combination of silence and agreement confirms Defendants are likely to succeed on the argument that Polymarket US acts under the CFTC when it promulgates and enforces rules regarding market access—which is all Defendants

---

[1] Plaintiff characterizes *Riggs* as about "formally delegated legal authority," Opp. 10 (quoting *Riggs*, 939 F.3d at 985), but the quotation comes from the Court's summary of the defendant's arguments—arguments the Court rejected, *see* Mot. 15.

need establish to secure reversal. *See* Mot. 17.

Regardless, Plaintiff's remaining arguments do not shore up the district court's decision. *Everyone* agrees that simply being federally regulated is insufficient; a private entity must "'*assist*, or . . . help *carry out*, the duties or *tasks* of the federal superior.'" Opp. 9-10 (quoting *Watson*, 551 U.S. at 151-52); Mot. 12 (same). Polymarket US does precisely that: As a "self-regulatory organization[]," it "'perform[s] important governmental functions'" and "exercis[es] quasi-governmental powers" when "adopt[ing]" and enforcing its "rules." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212-13 (9th Cir. 1998). Plaintiff's assertion that Defendants' theory would allow "every regulated party . . . to remove any case" is incorrect. Opp. 13.[2]

Plaintiff's attempts to distinguish *Sparta Surgical* go nowhere. Plaintiff notes that *Sparta Surgical* involved an entity regulated by the Securities and Exchange Commission. Opp. 12. But Plaintiff does not explain why this matters given that CFTC-supervised "contract markets" *also* serve as "self-regulatory organizations," exercising "delegated" authority. *Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619, 625 (7th Cir. 2022); *see* Mot. 1, 5.

Plaintiff adds that "*Sparta Surgical* is about governmental immunity, not

---

[2] Though Plaintiff suggests otherwise, *see* Opp. 10, this Court has *declined* to "decide whether *Watson* requires [an] 'unusually close' relationship," *Goncalves*, 865 F.3d at 1245. Still, "assuming this test applies," it is met here. *Id.*; *see* 2App215.

removal." Opp. 12. But that misses the point. To ensure those assisting the government can raise "federal immunity defenses" in "a federal forum," *Express Scripts*, 139 F.4th at 771 n.7, federal officer removal is "*broader* . . . than the test for official immunity," *Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (emphasis added). If a self-regulatory organization's promulgation and enforcement of rules is sufficient to permit a colorable governmental-*immunity* defense, it follows that the organization acts under the government when performing those functions. Mot. 14. Plaintiff has no response.

Plaintiff gets no further arguing that "this case involves only Polymarket's private business" rather than "'Polymarket's delegated authority.'" Opp. 13. Though Plaintiff might prefer to "focus on" its own characterization of its "claims," Opp. 11, courts must "credit the defendant's theory of the case," *Leite v. Crane*, 749 F.3d 1117, 1124 (9th Cir. 2014), for purposes of the § 1442 "jurisdictional inquiry," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431-32 (1999). And Defendants' theory is that the "claims directly target the ways Polymarket US exercises its delegated authority and assists the CFTC in supervising federally regulated markets," 2App220—consistent with Plaintiff's allegations that Polymarket US has inadequately policed—and improperly allowed certain Nevadans to access—its market, *e.g.*, 3App304-05 ¶¶33, 35. For good reason, then, even the district court disagreed with Plaintiff on this front. *See supra* pp.3-4.

## B. The District Court Has Federal Question Jurisdiction.

This Court is also likely to hold that there is federal question jurisdiction, *see* 28 U.S.C. § 1331, because Plaintiff's claims "necessarily raise[]" contested questions of federal law, *Gunn v. Minton*, 568 U.S. 251, 258 (2013). In Nevada, it is unlawful to operate without a state "gaming license[]," "[e]xcept as otherwise provided by law." Nev. Rev. Stat. § 465.086(1). The U.S. and Nevada Supreme Courts have interpreted the term "law" to "include[] federal as well as state law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 n.12 (1982); *see* Mot. 20-21. Thus, a court cannot decide Plaintiff's claims without addressing whether the Commodity Exchange Act permits Polymarket US to operate without a Nevada gaming license—a purely federal question, and one this Court is already deciding. Mot. 19-20.

Plaintiff maintains that a statute's reference to "law" "refer[s] 'only . . . to the laws of the government' that enacted the statute." Opp. 16 (quoting *Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 42 (1820) (Johnson, J., concurring)). The Nevada Supreme Court disagrees: Words like "law" and "lawful" are "general terms," "presumed" to cover "both state and federal law"; "when the Legislature means to specify state law, it does so." *Ceballos v. NP Palace, LLC*, 514 P.3d 1074, 1078 (Nev. 2022). This Court is likely to side with the Nevada Supreme Court—not a 200-year-old concurrence—in interpreting Nevada law. Mot. 20.

Pivoting, Plaintiff argues that the statute makes lawfulness "an affirmative defense," not an element of the claim. Opp. 16. The district court did not reach this argument, *see* 1App22; this Court need not either, *see* Mot. 17; and Plaintiff is wrong regardless. Where, as here, an "exception is incorporated in" the relevant provision, "the burden is on the prosecution to plead and prove that the defendant is not within the exception." *United States v. Vuitch,* 402 U.S. 62, 70 (1971). Plaintiff's cases, *see* Opp. 16-17, address a different situation—where "a statute has 'exemptions laid out apart from the prohibitions.'" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025); *see United States v. Carey*, 929 F.3d 1092, 1099 (9th Cir. 2019) (statute "first describes the prohibited behavior," "then offers the exception subsequently"); *Haddad v. State*, 2011 WL 1225795, at *2 (Nev. Jan. 13, 2011) (same).

Recognizing that there is federal question jurisdiction here does not require the Court to permit removal "anytime a defendant raises a federal defense." Opp. 18. It simply requires the Court to hold that, when the Nevada legislature used the word "law," it meant what it said.

## II. Defendants Will Suffer Irreparable Harm Without A Stay.

This case illustrates why "Congress has deemed it appropriate to allow appellate review *before* a district court may remand a case to state court." *BP P.L.C.*, 593 U.S. at 236 (emphasis added). Federal officer removal ensures that there is a federal forum to "litigate the merits of [federal] defenses," *Express Scripts*, 139 F.4th

at 770 n.6, and that state courts cannot "paralyze the operations of the government" in the meantime, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1254 (9th Cir. 2006). Plaintiff, however, is adamant that it *will* have the state court "consider[] the merits" while this appeal is pending, 2App64, and that it *will* continue its campaign to interfere with the federal "system of effective self-regulation" through emergency requests for injunctive relief, 7 U.S.C. § 5(b). A stay is therefore necessary to prevent Plaintiff from "defeat[ing] the very purpose of permitting an appeal." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021); *see* Mot. 22-23.

Plaintiff responds by attacking the policies underlying the federal officer removal statute. As Plaintiff sees it, Polymarket US is not "entitled to press its federal defense in a federal forum" because "[s]tate courts have the power and the duty to decide federal claims" and "have a particularly strong interest in adjudicating violations of state law." Opp. 20 (citing cases outside the § 1442 context). Whatever the merits of Plaintiff's view in an ordinary case, Congress has determined the opposite is true when a defendant invokes § 1442. Mot. 21-22. That is why it *does* matter that "this case [is] heard in federal court as opposed to state court," Opp. 21: Section 1442 reflects a congressional concern not about "state enforcement action[s]" generally, *id.*, but about state enforcement actions "in potentially hostile *state courts*," *Express Scripts*, 139 F.4th at 770 (emphasis added). Plaintiff's view

of the relative competencies of federal and state courts is irrelevant. *See* Opp. 19.

Plaintiff next asserts that *Express Scripts* stands for the very proposition the decision rejected: that something other than *Nken*'s "discretionary stay factors" applies to "motions to stay litigation in the federal officer removal context." 139 F.4th at 766. This Court declined to extend *automatic* stays in arbitration cases to remand orders because "litigation in state court … pending appeal" does not necessarily deprive every defendant of the benefits of a successful appeal. *Id.* at 770. Instead, the Court directed courts to employ "the discretionary stay system" to determine whether the "distinct concerns" raised by "federal officer removal" were implicated in "a particular case." *Id.* at 768, 771 n.7, 772.

Plaintiff does not dispute that those concerns are implicated here. *See* Mot. 21-23. And Plaintiff turns *Express Scripts* on its head when it asserts—without support—that the panel categorically "rejected" the possibility of irreparable harm from state-court litigation pending appeal. Opp. 19. By declining to adopt one categorical rule, *Express Scripts* did not silently endorse another.

The Supreme Court has long rejected Plaintiff's remaining argument—that a return to "federal court" "post-appeal" will cure any "harm" from state-court proceedings. Opp. 20. Where a state court "paralyze[s] the operations of the government," it frustrates the removal right "*even if* … the case can [later] be brought into the United States court for review." *Tennessee v. Davis*, 100 U.S. 257,

263 (1879) (emphasis added); *see Watson*, 551 U.S. at 150 (§ 1442 prevents States from "imped[ing] through delay . . . the enforcement of other federal law"). Plaintiff doubts that its *ex parte* injunctions "'paralyze'" any federal operations, Opp. 20, but that just restates the mistaken argument that Polymarket US is not performing any government functions. And it is unclear how the "merits" of Defendants' "ultimate" "preemption defense" are relevant to the irreparable-harm analysis. *Id.* at 20-21.

### III.    The Balance Of Equities And Public Interest Favor A Stay.

The remaining factors favor Defendants. A stay would advance "judicial economy" by avoiding needless confusion and wasted resources caused by litigating once in state court and again when the case returns to federal district court. *Express Scripts*, 139 F.4th at 772. And although a stay would cause some "delay," Congress "accepted" that possibility when it "authorized appellate review" here. *BP P.L.C.*, 593 U.S. at 245; *see* Mot. 23-25.

Instead of engaging with these issues, Plaintiff recites supposed harms that would follow if it were "prevent[ed]" from "enforc[ing] Nevada gaming law." Opp. 21-22; *see id.* at 22-23 (similar). But, as Plaintiff acknowledges, "this appeal is not about the merits" of the enforcement action. *Id.* at 2. "So," in Plaintiff's words, "that argument simply is not relevant to the question here, which is whether this case must be heard in federal court as opposed to state court." *Id.* at 21.

- 11 -

Regardless, Plaintiff's complaints about a stay run headlong into precedent Plaintiff does not address.

*First*, Plaintiff touts its interest "in state enforcement actions being litigated in state courts." Opp. 22. But that interest "must yield" to "federal . . . policy," *Liner v. Jafco, Inc.*, 375 U.S. 301, 309 (1964)—those removing under § 1442 are entitled to "a federal forum," *Watson*, 551 U.S. at 150; *see* Mot. 25. Plaintiff has no response.

*Second*, Plaintiff maintains that the "public interest" counsels against delay. Opp. 22. But Congress has concluded otherwise, and "even the most formidable policy arguments cannot overcome" that conclusion. *BP P.L.C.*, 593 U.S. at 25; *see* Mot. 25. Again, Plaintiff has nothing to say.

*Finally*, Plaintiff insists that it suffers "immediate and irreparable harm" every "day." Opp. 22. But Plaintiff's months-long "delay[s]" in attempting to enforce its laws against designated contract markets "impl[y] a lack of urgency and irreparable harm." Mot. 25 (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc)); *see* 2App212-13 (describing those delays). Unable to explain those delays or the inference case law draws from them, Plaintiff simply asserts, counterfactually, that it has "mov[ed] expeditiously to bring enforcement actions against all known [contract] markets operating in the State." Opp. 23. There is a reason not a single citation adorns that assertion.

## CONCLUSION

This Court should stay the remand order pending appeal.


Dated:  March 30, 2026


Mark A. Hutchison
Joseph C. Reynolds
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746


Adam P. Laxalt
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

By: */s/ Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.
Jacob T. Spencer
Adam I. Steene
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
tdupree@gibsondunn.com
jspencer@gibsondunn.com
asteene@gibsondunn.com
(202) 955-8500


Orin Snyder
Matt Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com
(212) 351-4000

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A), Circuit Rule 27-1, and Circuit Rule 32-3, because it contains 2,798 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

The response complies with the typeface and type-style requirements of Rule 32(a)(5)(A) and (a)(6) because it has been prepared in 14-point, Times New Roman font.

Dated:  March 30, 2026                          GIBSON, DUNN & CRUTCHER LLP


                                                By: */s/ Thomas H. Dupree Jr.*